·THE TANNERS NATIONAL BANK OF WOBURN *vs.* JAMES DEAN.

Middlesex.   May 8, 1933. — May 24, 1933.

Present: RUGG, C.J., PIERCE, WAIT, FIELD, & DONAHUE, JJ.

*Bills and Notes*, Accommodation paper, Validity.  *National Bank.*

The mere facts, that the maker of a promissory note, payable to a national bank and indorsed by a friend of the maker, signed the note at the request of an official of the bank, who told him before he signed that the bank could not lend money to the friend upon a second mortgage, that a straw would have to be used in order to make the loan and that the bank would look to the indorser and to the property for payment and would not hold the maker responsible; that the maker,

at the time he signed the note, indorsed checks of the bank, payable to his order, in a total sum equal to the amount of the note, the checks never otherwise being in his possession; and that at that time the friend's wife executed a note payable to the maker of the first note and secured by a mortgage executed by the friend and his wife, which mortgage and mortgage note said maker assigned to the bank, it being recited in the first note that it was secured by such an assignment, were not a defence to a subsequent action upon the first note by the bank against the maker: it was plain that the defendant's friend, not the plaintiff, was the party accommodated by the defendant.

Even if the plaintiff in the circumstances above described requested and received the note signed by the defendant for the purpose of evading the national bank act, that fact was not a defence to the action.

CONTRACT.    Writ dated August 14, 1931.

The action was on a promissory note for $3,500, referred to in the opinion as Exhibit 1, dated September 9, 1929, signed by the defendant, payable to the plaintiff, indorsed by one Robert P. Anderson, and reciting that it was secured by the assignment of a mortgage and mortgage note for $3,500 signed by Ethel Anderson.

The action was tried in the Superior Court before *J. J. Burns*, J.   Material evidence is stated in the opinion. Subject to leave reserved under G. L. (Ter. Ed.) c. 231, § 120, a verdict for the defendant was recorded.   Thereafter the judge ordered entered a verdict for the plaintiff in the sum of $1,688.25.   The defendant alleged an exception.

*J. Zisman*, for the defendant.

*R. Cross*, for the plaintiff.

PIERCE, J.   This is an action of contract brought to recover on a promissory note for $3,500 signed by the defendant and payable to the order of the plaintiff.   "It was agreed between the parties that if the defendant was liable, the balance due, including interest on the note in suit up to May 5, 1932, (the time of the trial) was $1,688.25."   The case was tried to a jury.   "The jury returned a verdict for the defendant, but before the verdict was recorded the court reserved leave to enter a different verdict, and later the court directed that a verdict be entered for the plaintiff in the sum of $1,688.25."   "The defendant duly saved an exception to this act . . . and to the direction of the verdict for the plaintiff."   The bill

of exceptions contains all the evidence material to the issue involved.

The pertinent facts are as follows: The plaintiff, hereinafter called the bank, was a national bank engaged in business in Woburn, Massachusetts, and the defendant was a salesman employed by The Osborne Company, dealing in calendar advertising. The defendant, the only witness in the case, was called by the plaintiff and testified that the signature on the note in suit was his signature; that said note was never in his possession, unless placing it before him to sign was in his possession; that after signing the note it was left at the bank; that he had known the cashier of the bank, one Alden, for two or three years prior to February 9, 1929, the date the note was signed; that he had also known one Anderson for about two years prior to said date; that several months before February 9, 1929, he had a conversation with Alden and told him he had a friend who would like to get a loan on a second mortgage, and that Alden said: "Well, why don't you send him in to see me?" He further testified that he brought Anderson into the bank, introduced him to Alden and left him with him; that thereafter he was called to the bank, and told by Alden that he wanted him to sign the note (Exhibit 1); that he asked Alden why he should sign it and Alden replied that the bank could not lend on a second mortgage and in order for the bank to overcome that a straw would have to be used and that Alden asked him, "Wouldn't you be willing to be a straw" and he asked Alden what it meant and Alden said, "We would look for the indorsers on the back of that note, and the property for the collection," that the defendant would not be responsible; that after the talk with Alden he signed the note in suit, and simultaneously with his execution of the note he indorsed a cashier's check for $500 dated February 9, 1929, payable to him; that at the same time he indorsed another check, for $3,000, also payable to him; that those checks were never in his possession; that the check for $500 was taken by the cashier after the indorsement and the check of $3,000 was given by the cashier after indorse-

ment to Anderson. "It was agreed that on February 9, 1929, Mrs. Anderson executed a note, payable to the defendant, secured by a mortgage executed by Mr. and Mrs. Anderson, and the defendant indorsed the note of Mrs. Anderson and assigned the note and mortgage to the plaintiff on that date."

The plaintiff duly objected to any testimony regarding conversation at and prior to the signing of the note and delivery of the checks which tended to vary the terms of the note. The issues raised by the defendant are "that the note was without consideration, and was executed for the accommodation of the bank, with an agreement that the bank would not look to the defendant for payment, and that the entire transaction was consummated by the plaintiff in the manner above stated for the purpose of avoiding the national banking laws prohibiting loans on second mortgages."

In an action upon a negotiable promissory note by the payee against the maker, parol evidence is admissible to show want of consideration, whether a party is an accommodation party, and also which party he accommodated. *Wolff* v. *Perkins*, 254 Mass. 10. G. L. (Ter. Ed.) c. 107, § 52, reads: "An accommodation party is one who has signed the instrument as maker, drawer, acceptor or endorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder in due course, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party." The instant case is governed by *Neal* v. *Wilson*, 213 Mass. 336, wherein the defendant at the solicitation of the cashier of the plaintiff bank, without any consideration, gave his check to the bank to make good an overdraft of a customer of the bank. It was there held that the defendant was liable to the bank though its cashier knew that the defendant received no consideration for the check; it was further held, on the facts, that the customer, not the bank, was the party accommodated. *International Trust Co.* v. *Wattendorf*, 256 Mass. 323. *German American State Bank* v. *Wat-*

*son*, 99 Kans. 686. *Nalitzky* v. *Williams*, 237 Fed. Rep. 802. The case of *Conners Brothers Co.* v. *Sullivan*, 220 Mass. 600, relied on by the defendant, is distinguishable in that the facts warranted a finding that the defendant, at the solicitation of the plaintiff and wholly for its convenience and accommodation, consented to the use of his name as a mere conduit to pass title to the plaintiff of the notes and other property with the distinct understanding and agreement that he should be under no personal liability. See also *Seager* v. *Drayton*, 217 Mass. 571, which is distinguishable in its facts from the case at bar. Upon the undisputed evidence in the case at bar it is obvious that Anderson was the accommodated party. The defendant before signing the note and indorsing the checks was told that the plaintiff could not make a direct loan on a second mortgage and that the bank could not extend credit to Anderson unless the defendant lent Anderson his name. The plaintiff knew that Anderson would receive the cash benefit if the bank lent the defendant money, and he signed the note and indorsed the checks upon this assumption. The fact that the plaintiff wished to lend Anderson money but could not do so because the law does not permit a direct loan upon a second mortgage, and therefore it induced the defendant to give his note promising to hold him harmless, did not affect the legal relations of the parties, if we assume the conduct of the plaintiff was conceived and executed with a purpose to evade the national bank act. *German American State Bank* v. *Watson*, 99 Kans. 686. *First National Bank of Greencastle* v. *Baer*, 277 Penn. St. 184.

*Exceptions overruled.*