WALTHAM TRUST COMPANY *vs.* ANTONIO CINCOTTA.

Middlesex.    November 13, 25, 1935. — January 28, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Bills and Notes*, Accommodation paper.    *Evidence*, Relevancy.

In an action by a bank as payee and holder of a promissory note against an accommodation indorser whose signature was obtained by the maker, the defendant could not show that the bank was the party accommodated by evidence that officers of the bank procured the making of the note to prevent a threatened sale of stock of the bank deposited elsewhere by the maker as collateral for a loan which was paid with the proceeds of the note; and evidence that at that time the placing of the bank's stock on the market would have been harmful to it was irrelevant.

CONTRACT.    Writ in the Second District Court of Eastern Middlesex dated January 2, 1935.

Upon removal to the Superior Court, the action was tried before *Walsh*, J., who ordered a verdict for the plaintiff in the sum of $1,592.43, and reported the action.

*W. J. Bannan*, (*R. W. McEnaney* with him,) for the defendant.

*F. L. Simpson*, *H. P. Moltedo*, & *R. J. Curran*, for the plaintiff, submitted a brief.

PIERCE, J.    This is an action of contract against an indorser of a promissory note, brought by the commissioner of banks on behalf of the Waltham Trust Company.    The case was tried to a jury.    At the conclusion of the evidence the plaintiff moved for a directed verdict.    The motion was allowed and the defendant duly excepted.    Thereupon the judge at the request of the defendant reported the case, with all the material evidence, for the determination of this court.

Such evidence discloses that the note in suit was dated February 15, 1932, was signed by Domenic Conte, indorsed by the defendant and one Raymond Dalla Porta, and payable to the Waltham Trust Company or its order.    The

defendant's brief states that "There is no dispute over the signatures, it being admitted that both the maker and the indorsers signed the note before delivery"; and that "Nothing has ever been paid upon the note, and if the defendant is liable, the amount due at the date of the trial, May 28, 1935, plus interest and an attorney's fee of $175 was $1,592.43." The defendant contended "there was no consideration . . . [for the note] in that he signed it solely for the benefit of the plaintiff."

The law applicable to the issue presented is stated in G. L. (Ter. Ed.) c. 107, § 52, which reads: "An accommodation party is one who has signed the instrument as maker, drawer, acceptor or endorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder in due course, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party"; and § 82, which reads: "Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course. But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

The reported evidence shows, in substance, the following facts: Domenic Conte was for many years an employee of the plaintiff in the capacity of manager of its foreign department. On February 15, 1932, and for a long time previously, he owed money to the Boston Five Cents Savings Bank, as security for which he had deposited one hundred twenty shares of stock of the plaintiff. In February, 1932, he had been requested to make payment on the note. The demand was made through a letter from the Boston Five Cents Savings Bank to Warren P. Elliott, treasurer of the plaintiff bank. The report warrants, if it does not require, the inference that there were ten or twelve other loans in the Boston Five Cents Savings Bank of stockholders

of the Waltham Trust Company, with deposits of that company's stock as collateral security. Conte testified, in substance, that the conversation with Elliott was that the Boston Five Cents Savings Bank was asking for more money on the Waltham Trust Company stock that Conte had there; that he replied: "I cannot pay anything, you know my condition. I owe $800 here at the bank and I cannot pay a cent"; that Elliott said, "we got to do something, otherwise they going to make trouble for the other people, they got the loan on the same stock in the bank"; that Conte said, "I cannot get any indorser, I cannot give any more money because I haven't got it. Let go the stock"; that Elliott said, "We cannot afford to do that because they [are] going to find no market and we [will] get in trouble"; that Conte replied, "Let go the stock, I cannot pay, I haven't got it."

Conte further testified that on the day after the conversation with Elliott the president of the plaintiff bank, one Eldridge, said to him: "Domenic, you must do something for that stock"; that Eldridge referred to a talk with Elliott, and said to Conte: "I [shall] arrange for you to get an industrial loan and get a couple of indorsers," to which he replied: "Mr. Eldridge, I cannot get a couple of indorsers." Eldridge then said: "I tell you what to do. You go see Father Dalla Porta and Tony Cincotta and have them indorse the note, we put it through." Conte replied: "Father Dalla Porta isn't in condition to sign any note because he is a charity priest, and Tony Cincotta had already a couple of notes here and we refuse two or three weeks previous to indorsement for his brother-in-law, so it is impossible for me to ask him for indorsement." Eldridge said: "this is only a matter of protection on the note, get the indorsers and we put it through, we got to protect the stock." He again told Eldridge he could not pay, that he could not pay the $800 note he had with the Waltham Trust Company. Eldridge replied that "this is only to protect the note"; that when the stock came back they would "straighten this matter"; that they must "protect the stock," that if they were "to throw this stock on the market" there would be

an "investigation" which would be "bad for the bank"; that when conditions were better they could "sell the stock" and "straighten up the note." Conte testified that "as a result of these two conversations, he (Conte) signed the note and secured the indorsements of Father Dalla Porta and the defendant."

The note in suit, after it was signed by Conte and indorsed by Dalla Porta and the defendant, Cincotta, was presented to Eldridge, approved by him, and then discounted. The proceeds were credited to Conte's account; and Conte testified that these proceeds were then used together with a small additional amount to purchase a treasurer's check payable to the Boston Five Cents Savings Bank and that "Mr. Elliot himself mailed the check to Five Cent Savings Bank of Boston. I asked him to take care [of the matter], he say 'Yes.' In fact he did take care himself. I don't know if he did mail it or present it himself to Five Cent Savings . . . I asked him if he was going to take care of the check for the Five Cent Savings Bank and he says, 'Yes, I will take care.'"

During the trial the defendant stated that his contention was, "This entire loan was made for the purpose of supporting a loan of Conte in the Boston Five Cents Savings Bank, which was collateral for (by) stock of the Waltham Trust Company; that there were a number of other loans by stockholders of the Waltham Trust Company in this same bank, namely the Boston Five Cents Savings Bank, and that this loan was negotiated at the request of the president of the Waltham Trust Company for the purpose of supporting the stock in the Boston Five Cents Savings Bank, to stop it going upon the market, as the Boston Five Cents Savings Bank was threatening to sell it." He offered to prove by evidence which was excluded, subject to his exceptions, that at that particular time "the Waltham Trust Company was in such a position that, if the stock had been put upon the market, it would have had very serious results upon the Waltham Trust Company. In other words, our contention is that this entire loan was negotiated at the request of the officials of the Waltham

Trust Company for the purpose of protecting the bank." The evidence excluded, set out in paragraphs "a" to "f" inclusive, was offered "for the purpose of showing the reasons why it was deemed advisable to prevent the sale of the capital stock of the plaintiff bank, and to show what happened to the proceeds of the note in suit."

On the uncontradicted evidence the defendant indorsed the note in suit for the accommodation of the maker, Conte, and not for the accommodation of the Waltham Trust Company. *Neal* v. *Wilson*, 213 Mass. 336. *Tanners National Bank of Woburn* v. *Dean*, 283 Mass. 151. The undisputed evidence that Conte, in common with others, had a loan with the Boston Five Cents Savings Bank, secured by collateral in the form of stock of the plaintiff; that the savings bank was calling for payment of this loan through the treasurer of the plaintiff and was threatening to sell the collateral stock; that the plaintiff desired Conte to make payment on his note to the savings bank to prevent the sale of the collateral stock and thereby avoid serious trouble to the plaintiff which might result from putting the stock on the market, discloses at the most that the plaintiff at that time procured Conte's execution of the note in suit for its accommodation, but did not warrant a finding that the defendant indorsed the note for the accommodation of the Waltham Trust Company or for any one other than Conte. The fact that the plaintiff knew that the defendant received no part of the proceeds of the discounted note and signed the note for the accommodation of Conte was not a defence open to the defendant in the absence of proof, as here, that the defendant also signed the note in suit for the accommodation of the Waltham Trust Company. G. L. (Ter. Ed.) c. 107, §§ 52, 82. *Liberty Trust Co.* v. *Tilton*, 217 Mass. 462. The case is distinguishable from *Salem Trust Co.* v. *Deery*, 289 Mass. 431, in that the facts in that case warranted a finding that the note was signed at the request of the plaintiff trust company, whereas in the case at bar the only possible finding on the evidence would be that the defendant signed the note at the request and for the benefit of Conte only.

See *Tanners National Bank of Woburn* v. *Dean*, 283 Mass. 151.

It is immaterial on the question of accommodation that the Waltham Trust Company demanded, at the request of the Boston Five Cents Savings Bank, that Conte should pay the whole or any part of his debt to the savings bank, or that such payment would protect its stock from being put upon the market and thereby causing serious results to come upon the Waltham Trust Company. *Neal* v. *Wilson*, 213 Mass. 336. Unless the defendant indorsed the note in suit for the accommodation of the Waltham Trust Company at its request, express or implied, its motive in inducing Conte to sign the note was immaterial in an action against the defendant. The proffered evidence "a" to "f" inclusive was excluded rightly. The verdict for the plaintiff was rightly directed.

*Judgment on the verdict.*