NONOTUCK SAVINGS BANK

*vs.*

IRVING T. NORTON AND ARLENE C. NORTON.

York.      Opinion, January 30, 1937.

*Ralph W. Hawkes,*
*Albertus D. Morse,* for plaintiff.
*Nicolaus Harithas,*
*Charles E. Drapeau,* for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

HUDSON, J. Action of assumpsit, reported to the Law Court for determination "upon the evidence or so much thereof as is legally admissible." When brought, both Mr. and Mrs. Norton were named as defendants, but later the action was dismissed as to him.

The joint and several note in suit, dated May 2, 1932, and payable on demand to the plaintiff or order, is a renewal of their note given on May 1, 1931. The latter note likewise was a renewal in a series of notes given by Mr. Norton to the plaintiff.

The note sued, constituting a contract made in the Commonwealth of Massachusetts, its execution, construction and validity must be determined by the law of that state. *Bond* v. *Cummings,* 70 Me., 125 ; *Roads* v. *Webb, Admx.,* 91 Me., 406, 40 A., 128.

That Mrs. Norton signed the 1931 and 1932 notes as an accommodation maker does not seem to be questioned. Within the definition of "an accommodation party" as it appeared in the Negotiable Instrument Law of the Commonwealth of Massachusetts (see General Laws, Chap. 107, Sec. 52), she signed the notes as maker, received no value therefor, and lent her name. In the same section it is provided "such a person is liable on the instrument to a holder in due course, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party." Under Section 18 of that chapter a holder is "the payee or endorsee of a bill or note, who is in possession of it, or the bearer thereof" and under Section 82 "every holder is deemed prima facie to be a holder in due course. . . ."

The fact that one is the payee in a note does not prevent him

from being a holder in due course. *Lowell* v. *Bickford et al.*, 201 Mass., 543, 88 N. E., 1; *Karlsberg* v. *Frank*, 282 Mass., 94, 184 N. E., 387; *Tanners' National Bank of Woburn* v. *Dean*, 283 Mass., 151, 186 N. E., 219.

We are satisfied that under the Massachusetts law the plaintiff is a holder in due course and the present defendant an accommodation maker of the note in suit.

Mrs. Norton's principal contention is that she signed for the bank's rather than her husband's accommodation. If she signed "only at the request and for the benefit" of the plaintiff, as claimed by her counsel, she would not be liable. *Conners Brothers Company* v. *Sullivan et al.*, 220 Mass., 600, 108 N. E. 503.

Then for whose accommodation did she sign? The evidence that will determine this fact clusters about the execution of the 1931 note, for, as stated in the brief of the defendant's counsel, the second note "was signed 'under the same conditions' as the first note."

On June 16, 1931, Mr. Whitbeck, treasurer of the bank, wrote a letter to *Mr. Norton* asking "for additional collateral" on account of the 1931 note, and said: "If you can not supply the same, we would request that your wife and father or mother join you in the note." Upon receipt of this letter, Mr. Norton immediately showed it to his wife. He told her about the note and requested her to go to the bank with him. This she did on June 19, 1931, and signed it as an accommodation maker. There is a sharp conflict of testimony as to the conversation that took place between the treasurer and Mr. and Mrs. Norton. The defence claims that he told Mr. Norton that if his wife signed the note she "wouldn't be liable." This the plaintiff definitely denies.

If Mrs. Norton signed only for the accommodation of her husband, then under the well-established law in Massachusetts, the alleged statement as to non-liability was not admissible. *Davis, Receiver et al.* v. *Randall,* 115 Mass., 547; *Commonwealth Trust Co.* v. *Coveney et al.*, 200 Mass., 379, 86 N. E., 895; *Neal, Receiver* v. *Wilson,* 213 Mass., 336, 100 N. E., 544; *Prudential Trust Co.* v. *Moore,* 245 Mass., 311, 139 N. E., 645; *Tanners' National Bank of Woburn* v. *Dean,* supra; *Salem Trust Co.* v. *Deery,* 289 Mass.,

431, 194 N. E., 307; *Commissioner of Banks* v. *Cincotta,* 199 N. E., 910 (Mass.).

In *Salem Trust Company* v. *Deery,* supra, the court said, on page 435:

> "Moreover, if she signed the note for her husband's accommodation, the representation made by the Vice-President of the plaintiff that she would not be liable on the note would not excuse or limit her liability."

We are convinced that Mr. Norton was the one accommodated. It can not be denied that her interest was naturally in his welfare rather than that of the bank. True, he was being pressed, but that is not necessarily of controlling moment. Its effect upon her as a wife might have influenced her all the more to "lend her name" to him. So doing, she would be none the less liable even had she been solicited directly by the bank. *Neal, Receiver* v. *Wilson,* supra; *Tanners' National Bank* v. *Dean,* supra; *Commissioner of Banks* v. *Cincotta,* supra.

The manner of procuring her signature is significant. He induced her to go to the bank. She went, knowing the contents of the letter, and that he must comply in some way with the bank's suggestion. She knew, too, that her husband had no additional collateral that he could offer. She testified that he wanted her "there as an answer to the letter." When she was asked, "What did you think you were going to do when you got there?" she said, "To see if it was necessary" and admitted that she "went down, acting on this letter, at his request." She also said, "He took me down there with the understanding I might have to sign it" and stated that probably she would not have signed it, if it had been anybody else's note except her husband's. When asked, "The reason you signed the note was because it was your husband's obligation, wasn't it?" she answered, "Well, primarily, yes."

Mr. Norton's testimony does not differ materially. Still, when pressed upon cross-examination as to why he took his wife to the bank unless to have her sign for his accommodation, he replied, "I took her down partially as a witness, because at that time, knowing my financial situation I knew that there had got to be a show-down of some kind. . . . I wanted her to know what my dealings were." We

are not impressed with that as an explanation in view of the fact that by her own admission she already had that information.

As she signed the earlier note for his accommodation, so did she the note sued. It being only for his accommodation, even if the treasurer told her she would not be liable—and we doubt it—it would constitute no defence to this action, according to the Massachusetts cases above cited.

The entry must be, *Case remanded for entry of: Judgment for the plaintiff.*