QUINCY TRUST COMPANY *vs.* ELMER M. WOODBURY & another.

Norfolk.   November 4, 1937. — March 1, 1938.

Present: FIELD, DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Bills and Notes*, Accommodation, Consideration, Renewal. *Estoppel.*

It was a defence to the indorser of a renewal note that it and the original note were indorsed for the accommodation of the payee-holder without consideration.

Evidence that an indorsement of a promissory note payable to a bank was obtained by its officers as "a personal favor" and "to make that note look good in the eyes of the bank examiners," warranted a finding that the indorsement was for the accommodation of the bank.

In an action by the payee of a promissory note against an indorser, evidence that the plaintiff's agent had obtained the indorsement without consideration for the plaintiff's accommodation was admissible without proof of the agent's authority to do so.

In an action by a trust company against an indorser of a note, the defendant was not estopped to set up the defence, that his indorsement was without consideration and for the accommodation of the plaintiff, by the fact that it had been obtained to make the note "look good in the eyes of the bank examiners," if there was nothing to show that the note affected the plaintiff's creditors.

CONTRACT. Writ in the District Court of East Norfolk dated October 23, 1936.

Upon removal to the Superior Court, the action was tried before *O'Connell*, J. There was a verdict for the defendants. The plaintiff alleged exceptions.

*J. B. Goding,* for the plaintiff.

*G. L. Harden,* for the defendants.

LUMMUS, J. The defendants, husband and wife, are sued upon their indorsements of a renewal note for $14,-027.58, given on May 18, 1932, and payable July 18, 1932, to the order of the plaintiff. The maker was a corporation called C. B. Yule & Sons, Inc., engaged in the garage business, and owned and operated by the father and brothers of the female defendant.

After the introduction of the note, the plaintiff rested. Evidence for the defendants showed that their signatures to the original note, dated December 15, 1930, of which the note sued on was the last of a series of renewals, were obtained under the following circumstances. The president of the plaintiff told the female defendant, who kept the books for the garage corporation, that the plaintiff held a miscellaneous collection of defaulted notes and overdrafts of the garage corporation, that the transactions would not be approved by the bank examiners, and that he wished a new note covering the entire indebtedness, about $14,000. Such a note was sent to the president of the plaintiff, but he sent it back for the indorsements of the owners of the corporation. These were obtained. The president of the plaintiff then told the female defendant that he wanted two new names as indorsers, because "this is going before the bank examiners, and I would like to have two new names on that note, because the garage business is bad. . . . I would like to have Elmer and you [the defendants] sign it." To her objections he answered that some of the earlier notes were "balloon notes" which were against good banking practice, that he would like to get them out of the bank files because the bank examiners would not look favorably upon them, that he had

done her favors in the past, that he was asking a favor from her now, and that he would never call upon either defendant to pay the note. Her husband, when told of the proposal, objected to signing, and later the treasurer of the plaintiff talked with both defendants. He told them that "It is going to do . . . [the president] a personal favor, and it will do the bank directors a personal favor if you will please sign this note," and assured them that "the bank will never call upon you to pay it" and that "it is purely and simply to make that note look good in the eyes of the bank examiners." The defendants then indorsed the note. G. L. (Ter. Ed.) c. 107, § 87. There was no evidence of any new consideration for their indorsements on the successive renewal notes; they merely indorsed the renewal notes when brought to them.

The judge denied, subject to the exception of the plaintiff, a motion for a directed verdict for the plaintiff.* The jury returned a verdict for the defendants.

A contemporaneous oral agreement that a promissory note given for consideration shall not actually create the obligation that its words express, is of no effect. *Wolff* v. *Perkins*, 254 Mass. 10, 13. *Buckley* v. *Hacking*, 258 Mass. 525. *Dodge* v. *Bowen*, 264 Mass. 208, 213. *Starks* v. *O'Hara*, 266 Mass. 310, 314. *Reardon* v. *Murdock*, 292 Mass. 362, 364. But in the present case the defendants received no consideration. Even if the earlier notes were extinguished by the note of December 15, 1930, there is no evidence that such extinguishment was the consideration for the indorsements. The delivery of a note "may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument." G. L. (Ter. Ed.) c. 107, § 38. "Absence . . . of consideration is matter of defence as against any person not a holder in due course." § 51. An indorser is not liable to one for whose accommodation the indorser

---

* The plaintiff also excepted to the testimony as to the conversations of the defendants with the president and treasurer of the plaintiff. — REPORTER.

has signed "without receiving value therefor, and for the purpose of lending his name to" the party accommodated. § 52. In the present case evidence properly admitted warranted a finding that the defendant indorsers signed the note of December 15, 1930, without any consideration, merely for the accommodation of the plaintiff payee, and that there was no more consideration for the renewal notes than for that note. *Salem Trust Co.* v. *Deery,* 289 Mass. 431. *Great Barrington Savings Bank* v. *Day,* 288 Mass. 181. *Waltham Trust Co.* v. *Cincotta,* 293 Mass. 272, 276. *Corlies* v. *Howe,* 11 Gray, 125. See also *Tait* v. *Downey,* 267 Mass. 422, 430. Whether the words and acts of the president and treasurer were authorized or unauthorized, there was evidence of want of consideration. Besides, even if they were unauthorized, the plaintiff must take the bitter with the sweet, and cannot claim under the note while disavowing the means by which it was obtained. *Edgar* v. *Joseph Breck & Sons Corp.* 172 Mass. 581, 583. *Porter* v. *Ocean Steamship Co. of Savannah,* 223 Mass. 224, 226. *Reed* v. *A. E. Little Co.* 256 Mass. 442, 448. *Cambridgeport Savings Bank* v. *Boston,* 297 Mass. 309, 313. Am. Law Inst. Restatement: Agency, §§ 98, 99. The statement in *Black River Savings Bank* v. *Edwards,* 10 Gray, 387, 395, upon the facts in that case, is not to the contrary.

The plaintiff contends, however, that the defendants cannot make this defence to the renewal note, because their indorsements of the original note were intended to give the plaintiff an apparent soundness, the reality of which the defendants cannot be permitted to deny or impair. It is true that circumstances somewhat like those in the present case might create an estoppel against such a defence. *Prudential Trust Co.* v. *Moore,* 245 Mass. 311, 316. *International Trust Co.* v. *Wattendorf,* 256 Mass. 323. *Schmid* v. *Haines,* 115 N. J. L. 271, 274. But the present record contains nothing to show an estoppel. It does not appear that the impending visit of the bank examiners ever took place, much less that the notes in question had any actual effect upon the situation of creditors of the

plaintiff. *Anamoose National Bank* v. *Dockter*, 56 N. D. 33. *Agricultural Bank* v. *Robinson*, 24 Maine, 274.

*Exceptions overruled.*