*Southern District*

## THOMAS H. HANNAFORD

v.

## EMIL A. CARLSON AND
## ANNA A. CARLSON
and
## GRANITE TRUST COMPANY, TRUSTEE

Argued: Dec. 21, 1971 - Decided: April , 1971

*Present:* Murphy, P.J., Covett, Rider, J.J.

Case Tried before *Sullivan, J.,* in the District Court of East Norfolk, No. 94755.

**Murphy, P.J.** This is an action of contract to recover money alleged to be owing on two promissory notes. The answer of the defendants, Emil A. Carlson and Anna A. Carlson,

is a general denial, and many other defenses, including lack of consideration, illegality and that the execution of the notes was contrary to public policy.

 This report should have been condensed in accordance with the Rules of the District Courts, 1965, as amended; it contains 21 pages. There are twelve objections to the admissibility of evidence. All of this testimony was accepted *de bene,* and the plaintiff's motion to strike the testimony having been denied, the plaintiff requested the rulings be reported.

The objections present the same issue in each instance, namely, that they relate to conversations had prior to or contemporaneously with the execution of the notes in question which were inadmissible and therefore, it would seem to have been unnecessary or not required to repeat all of the questions and answers in the report.

The substantial question is whether or not the denial of these motions to strike certain of the evidence was proper, having in mind the parol evidence rule. If the evidence is admissible and believed, it is decisive of the case.

Both parties have argued strongly in defense of their position in this case and have prepared excellent briefs which have been very helpful to this Division.

In 1949, the defendant, Emil A. Carlson, a carpenter, lived in an area off Lake Street in Weymouth, Mass., abutting a tract owned by

the plaintiff, Thomas Hannaford, a real estate operator of some means. On June 14, 1949, the plaintiff conveyed to Emil A. Carlson and his wife Anna A. three of the lots from the larger tract.

On the same day, Hannaford was given two promissory notes: one in the amount of $1,000.00 bearing the date June 15, 1949, signed Emil A. Carlson and a promissory note signed by Emil A. and Anna Carlson in the amount of $5,000.00, bearing the same date with interest at 5 percent. Both notes were signed in Hannaford's presence and the signatures thereon were that of Emil A. and Anna Carlson. As security for the notes, Hannaford took a mortgage on the property, signed by both defendants. There is no evidence in the record that any payments were ever made on these notes.

Some time after the conveyance and prior to the commencement of this action in 1955, the three lots in question, along with the rest of the Lake Street tract owned by Hannaford, were taken by eminent domain by the Weymouth Housing Authority. As a result of this taking, Hannaford brought two petitions for damages: one for the larger tract still in his name, and one as mortgagee for the lots deeded to the defendants. Following a jury trial, he recovered $675 for the three lots conveyed to the Carlsons.

The defendants, themselves, never brought

a petition for damages as owners of the property.

A summary of the evidence admitted *de bene* follows:

Emil Carlson testified as to conversations with the plaintiff in late May or early June, 1949, and again on the day of the conveyance — June 15. Hannaford had approached him and informed him that the Authority was planning to take the property, and asked him to hold the three lots until after the taking of the rest of plaintiff's tract. Following the taking, the property was to be reconveyed to the plaintiff. There was further evidence from the plaintiff that it would cost the defendant nothing, that it was being done only as a favor to the plaintiff, and that he (Hannaford) would bear the expenses. When asked why the notes were necessary, Hannaford stated that it was just to make the transaction appear legal and enhance the value of the land in the event of a taking, and that after eminent domain proceedings were terminated, the plaintiff would take back the land at no expense to the Carlsons.

During cross-examination Hannaford admitted that he had had discussions with the Weymouth Housing Authority and that they had indicated that they were interested in the property in question. He further admitted that they had discussed the possible purchase and sale of the land. The present director of the Authority, John L. Stirianno, testifying from Au-

thority records, indicated that there had been discussions with Mr. Hannaford in February of 1949 regarding the purchase and sale of the property. The Authority rejected Hannaford's sale price and informed him that the property would probably be taken by eminent domain.

There was further evidence from one Charles H. Polson who had been present during the initial discussion between Hannaford and Carlson. Polson's testimony substantially confirmed the fact that the plaintiff had told the defendant that if he would take the deed, the Authority probably would not take the smaller three-lot parcel.

At the close of the evidence and before final arguments, the plaintiff filed 13 requests for rulings, all of which were allowed except that the court denied the following:

"1. The evidence requires a finding for the plaintiff.

2. The evidence warrants a finding for the plaintiff because:

(a) The signatures are genuine and authorized.

(b) The plaintiff as a holder in due course has produced the instruments.

(c) The defendants had knowledge of the character or terms of the intruments.

(d) The defendants had reasonable opportunity to know of the char-

acter or terms of the instruments.

(e) There was no misrepresentation with respect to the terms of the instruments that were executed and delivered.

(f) Lack of consideration is not a defense against a holder in due course.

(g) There being no illegality to the promissory notes, the defense of illegality is cut off.

(h) The wife is an accommodation maker upon her husband's note.

3. If the plaintiff as a holder of instruments produces the same and the signatures of the maker are established, then the plaintiff is entitled to recover under the said instruments.''

The plaintiff requested a report of such denials.

The court found the following facts:

''The Court finds that the parties executed a mortgage, note, and deed for the sole purpose of influencing the taking of real estate by eminent domain and inflating its 'market' value in anticipation of said taking; and that the transaction was against the public policy and illegal.''

''The Court further finds that the plaintiff, the payee and holder, was lacking in good faith, and as such is not a 'holder in due course.' ''

The court found for the defendants.

At the close of the trial and before the finding by the court, the defendants filed a motion to amend defendants' substitute answer alleging that defendants signed the notes as accommodation parties and that the party accommodated was the plaintiff, which motion was allowed by the court and the plaintiff requested a report of this ruling.

The paintiff claims to be aggrieved:

(a) by the denial of his requests for rulings Nos. 1, 2 (a) through (h) and 3,

(b) by the denial of his motion to strike the *de bene* testimony of Emil A. Carlson, John L. Stirianno, Charles H. Polson, and Thomas H. Hannaford as to conversations and statements prior to or contemporaneously with the execution of the promissory notes on June 15, 1949, and

(c) by the allowance of defendant's motion to amend defendants' substituted answer.

. The plaintiff contends strongly in his brief and argument that all of the evidence introduced with respect to conversations prior to the execution of the notes was inadmissible and violative of the parol evidence rule, which is a rule of substantive law that in essence states parol evidence cannot be introduced to vary, contradict or alter the terms of a written agreement. We disagree. This evidence comes within an exception to that rule and hence is

admissible. When such evidence is offered to show that what happened to be a contract was intended for another purpose, the parol evidence rule does not apply. *Beaman-Marvell Co.* v. *Gunn,* 306 Mass. 419, 422-423 and cases cited.

In the instant case it is obvious that the defendants executed the notes "for another purpose" and the judge so found. They were assured that it would cost them nothing, and they were only to hold the lots until after the taking, that the notes were given to enhance the value of the land and that they were doing a favor for the plaintiff at no risk or cost to them. In other words, they were accommodating the plaintiff and were not to be held liable on the notes. *Quincy Trust Co.* v. *Woodbury,* 299 Mass. 565. *Salem Trust Co.* v. *Deery,* 289 Mass. 431. A promise made with the understanding that it is not to be legally binding is unenforceable. *Kuzmeskus* v. *Pickup Motor Co., Inc.,* 330 Mass. 490.

▪ Further, such evidence is admissible when it is offered to show that there was no consideration for the contract, even though a consideration was recited. *United Beef Co.* v. *Childs,* 306 Mass. 187.

▪ There was ample evidence that the execution of these notes was merely for the accommodation of the plaintiff. *Boston Five Cents Savings Bank* v. *Brooks,* 309 Mass. 52.

The case relied upon strongly by the plaintiff, namely, *Starks* v. *O'Hara,* 266 Mass. 310,

is clearly distinguishable from the case before us. In that case, the evidence was offered to show the plaintiff said he would look to the land for payment and not to the note, and in any event, the court in that same case said at page 314, "This case is to be distinguished from those in which the evidence offered tended to show that the notes were given without consideration, as in *Levinson* v. *Lavalle*, 243 Mass. 47." This is exactly the situation in the present ase. The notes were given without consideration, and there was no immediate consideration as in *Sherman* v. *Koufman*, 349 Mass. 606, nor was there consideration in the inception of these notes as in *Salem Trust Co.* v. *Deery* and *Quincy Trust Co.* v. *Woodbury*.

█. Absence of consideration is a matter of defense against everyone except a holder in due course. See G.L. c. 107, §51. (Prior to the adoption of G.L. c. 106, §3 — 408 in the Uniform Commercial Code in 1958).

█ The plaintiff's contention that he is a holder in due course is without merit. These notes were executed prior to the enactment of the Uniform Commercial Code in Massachusetts and the plaintiff in order to obtain the benefits accorded a holder in due course was required to take the instrument in good faith and without "notice of any infirmity in the instrument"; both of these requirements are lacking in this case. The plaintiff does not

qualify as a holder in due course, and the judge so found. We concur in that respect.

Further, it is apparent from the record that the plaintiff was well aware of any defenses, which might been raised by the defendants, and those cases which provide that the payee of the note is a holder in due course require special circumstances isolating the payee from the transaction in order to fit within the "no-notice" requirement. *Liberty Trust Co.* v. *Tilton,* 217 Mass. 462.

Once established as being admissible, the reported evidence clearly shows that the plaintiff merely wanted the defendants to hold title to the land in question as a favor to him to prevent its being taken by the Weymouth Housing Authority; and further shows that the promissory notes declared upon were to impress the entire agreement with the appearance of a genuine transaction. It also tends to show that the amount of the note was set merely to inflate the value of the remainder of the plaintiff's land in the expectation that it was to be taken by the Weymouth Housing Authority.

The jury in the land damage case brought by the mortgagee, not the owner, actually assessed the value of these lots at $675. Consequently, the Weymouth Housing Authority has the land, the plaintiff has the notes and the defendants have nothing.

The judge by his general finding for the defendants found that the parties did not in-

tend that the defendants be held liable; that the notes were executed without consideration and as a favor to the plaintiff by the defendants and for no other purpose.

A general finding for the defendants by the trial judge will not be disturbed by this court if it can be supported upon any reasonable view of the evidence with all rational inferences of which it is susceptible, unless such finding is plainly wrong. *Moss* v. *Old Colony Trust Co.*, 246 Mass. 139. *Barttro* v. *Watertown Square Theatre, Inc.*, 309 Mass. 223. *DiIeso* v. *Bellino*, 338 Mass. 801.

We cannot say this finding is plainly wrong. There is ample evidence in the record to support it. That being the case, it is unnecessary for us to consider the special findings made by the judge that the transaction was against public policy and illegal.

 With respect to the amendment offered by the defendants to amend and substitute an answer raising the question of accommodation maker, G.L. c. 231, §51, allows the court to grant such a motion at any time prior to judgment. The issue was fully and fairly tried and the action in this regard was proper. *Stakelieunias* v. *Senuta*, 314 Mass. 657 and cases cited.

The judge's findings of fact, even though brief, coupled with his general finding for the defendants, were sufficient to justify the denial of the plaintiff's requested rulings.

· Since we perceive no prejudicial error, an order should be entered dismissing the report.

WILLIAM S. MONAHAN
 for Plaintiff

STEPHEN T. KEEFE, JR.
 for Defendant