CENTRAL TRUST COMPANY *vs.* BENJAMIN RUDNICK & others.

Suffolk.    October 10, 1941. — October 31, 1941.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Contract,* Construction, Straw. *Bills and Notes,* Accommodation, Straw. *Agency,* Principal's liability to agent, Straw. *Exoneration.*

A contract in writing, which was between a bank, a second party, who was stated therein to desire to take over the title and management of certain real estate owned by the bank, and a third party; which had been carefully prepared by the bank's attorney and admittedly fully and accurately set forth its terms and was unambiguous; and which provided in substance that title to the property should be taken by a nominee of the second party who should give a mortgage back to the bank, that the second party, acting "as trustee" for himself and the bank, should make collections and disbursements, perform certain other acts with respect to the management of the property, and retain certain balances, and that the third party should be such nominee of the second party and "holder of record title" of the property and should perform such acts as were to be performed by the "owner of the premises," was a contract that the third party should act as a straw, and neither expressly nor impliedly made the second party liable to pay the bank the mortgage note given by the straw in accordance with it.

A straw, who took title to certain real estate owned by a bank and gave to the bank a promissory note secured by a mortgage in accordance with a contract in writing between the bank, the straw and one who was stated therein to desire to take over the title and management of the property, properly was found not to have signed the note for accommodation of the bank, and to have been liable as its maker.

A straw, who took title to real estate and gave a note secured by a mortgage back to the grantor in accordance with an unambiguous contract in writing between the grantor, the straw and the straw's principal which imposed no liability upon the principal to the payee to pay the note and included no express agreement by the principal to exonerate the straw from liability respecting the note, had no such right of exoneration against the principal which the payee could reach and apply in satisfaction of his claim against the straw as maker.

BILL IN EQUITY, filed in the Superior Court on March 6, 1940.

The case, after a hearing by *Morton,* J., was reserved and reported to this court.

*D. J. Cohen (E. J. Flavin* with him,) for the plaintiff.

*D. Stoneman (S. S. Stoneman* with him,) for the defendants.

RONAN, J. This is a bill in equity seeking to recover the sum of $171,615.32 of the defendant Benjamin Rudnick under a written contract executed by him on November 10, 1931; to establish the indebtedness of the defendant Baer in said sum, as the balance due upon a mortgage note in the principal sum of $463,000 payable to the plaintiff, hereinafter called the bank, made by her on said date; and to reach her alleged right of indemnification and exoneration as agent of Rudnick in satisfaction of her liability upon the said note. After a trial in the Superior Court, the judge made a report of the material facts and ordered the entry of a decree dismissing the bill as against Rudnick and ordering Baer to pay the balance due on the mortgage note amounting to $171,615.32 with interest. The parties then stipulated that the case be reported to this court and that the defendant Baer should have the right to contend that she was not liable on the mortgage note, and that the plaintiff should have the right to argue that Baer had a right to be exonerated and indemnified by Rudnick and that it is entitled to reach and apply this right in satisfaction of her indebtedness on the mortgage note. The judge then reported the case to this court upon the pleadings, transcript of evidence, the report of material facts and the stipulation of the parties.

We have examined the report of the evidence and the findings of material facts. Many of the salient facts are not in dispute. The bank held a second mortgage in the sum of $110,000 upon certain premises in Boston. The note secured by this mortgage was indorsed by Joseph F. Rudnick and one Kaye, two relatives of the defendant Rudnick. This mortgage was subject to a first mortgage upon which the sum of $323,000 was unpaid. The bank foreclosed its second mortgage on November 3, 1931, taking title in the name of a subsidiary corporation. The defendant Rudnick, after a series of conferences with the bank, entered into a contract with it on November 10, 1931. The contract in an introductory paragraph recited that Rudnick

desired to take over the title and management of the property. The contract was executed by the bank, by Rudnick as trustee, and by Baer. Rudnick agreed to procure a conveyance of the property to himself "or a nominee acting for him"; that he or his nominee would execute a note to the bank in the sum of $463,000, secured by a mortgage upon said property, maturing in five years and payable in monthly instalments of $750 upon the principal sum of the said note together with monthly payments of interest, the "said mortgage" being "security for" the payment of the then investment of the bank, which amounted to $100,500, and for certain amounts that the bank had paid to remove defaults in the condition of the first mortgage, and also for certain amounts that the bank intended to advance and for sums that the bank might expend in refinancing the first mortgage. It was also agreed that the owner of the record title would execute new first and second mortgages if the bank paid off the existing first mortgage; that Rudnick "as Trustee acting for the benefit of himself and the Central Trust Company" would collect the gross receipts, which were to be deposited in the bank and expended in paying the operating expenses of the property and the payments due on the mortgage securing the note for $463,000, with the right in Rudnick to retain accumulations of any surplus exceeding $4,500 and to make certain other applications of these gross receipts; that he would procure bills of sale of personal property located upon the property; that he would keep accounts in a manner satisfactory to the bank and would render monthly statements to the bank; that he would use his best efforts in the operation and management of the property; that in his absence his brother, Morris Rudnick, would act for him; that if he became incapable of acting further as trustee, his successor should be satisfactory to the bank. The contract further provided that the prompt performance of the covenants to be performed by Rudnick or his nominee as holder of the record title or any holder for the time being thereafter should constitute a condition of the mortgage, and that failure to observe such covenants should discharge the

bank from its obligation to make further advances of money, provided it gave written notice of such failure and the default was not made good within thirty days. Notices required under the contract were to be given to Rudnick. Baer, in consideration of one dollar and other consideration paid by the bank and Rudnick, agreed to observe all the provisions of the contract which were to be performed by the owner of the premises.[1] The contract purported to bind the parties, their heirs, assigns and personal representatives.

Title was conveyed to Baer, who delivered a note for $463,000 to the bank and a mortgage which recited that it was to secure the performance of the contract. She conveyed the premises on November 18, 1931, to Pilgrim Apartments Inc. in accordance with an offer made to it on November 10, 1931, by Rudnick. This corporation was incorporated by the bank's attorneys and their fees for this work were apparently included in the amount for which the mortgage was given. Ten shares of stock were issued by this corporation, one to Baer, two to two other persons, the three of them being nominees of Morris Rudnick, and the remaining seven shares were held by the defendant Rudnick in trust for Kaye and Joseph Rudnick who had been prior owners of the property. The defendant Rudnick was designated by the corporation as general manager of the property for the term of five years. The note secured by the original second mortgage to the bank, which was indorsed by Kaye and Joseph Rudnick, was surrendered by the bank and the defendant Rudnick began to carry out the contract of November 10, 1931. The first mortgage was foreclosed in September, 1935, and title was conveyed to Pilgrim Real Estate, Inc., another corporation which

---

[1] This provision in the contract comprised the last numbered paragraph, was the only one mentioning Baer by name, and was as follows: "21. I, Martha Baer, nominee of Benjamin Rudnick and holder of record title to the property referred to in the within agreement, in consideration of One Dollar and other valuable consideration to me paid by Central Trust Company and Benjamin Rudnick do hereby for myself, my heirs, executors, administrators and assigns covenant and agree to observe all the terms, conditions, covenants and agreements to be observed by the owner of the premises as fully and effectually as if I were named specifically in each such term, condition, covenant or agreement." — REPORTER.

was formed at that time, the defendant Rudnick being its treasurer and one of its directors. This last mentioned company gave a second mortgage for $97,000 to Joseph Rudnick and the defendant Benjamin Rudnick, as trustees of the Pilgrim Investment Trust.

The bank contends that the defendant Rudnick, by virtue of the contract, became bound to pay the amount that it had invested in and expended on the property and for the payment of which the mortgage was given by Baer. This contract was carefully prepared by the attorneys for the bank, who were apparently familiar with all the details of the transaction and there is nothing upon the face of the contract nor in the evidence tending to show that it did not fully and accurately set forth the agreement into which the parties had entered. The bank makes no contention to the contrary but it argues that by the terms of the contract Rudnick became its debtor to pay it the amount it had invested. It, however, points to no provision by which such an obligation is in direct terms imposed upon him. The absence of such a provision becomes significant in view of the presence of various other provisions relating to the collection of the rents, their deposit and application, the procuring of bills of sales of personal property upon the property and the management of the property, in reference to all of which Rudnick had assumed a personal obligation to perform in accordance with the terms of the contract. But if there is no express promise to pay, then it is contended that the contract clearly imports a promise by Rudnick to pay the bank the amount of its investment. In this respect reliance is placed upon the provisions requiring Rudnick or his nominee to execute and deliver the note and mortgage for $463,000; the payment of interest on this amount; the undertaking of the bank to advance further sums; the waiver by the bank of an accounting for certain past rents and the promise of Rudnick to pay the bank the rents collected between the time of entry under its original second mortgage and the date of the contract; the use by Rudnick of the accumulated surplus of rents when the amount exceeded $4,500; the prompt performance of cer-

tain terms of the contract by Rudnick; the furnishing of notice to Rudnick of any defaults; and the assumption of such liability as might be incurred by a party, by the heirs, personal representatives and assigns of such party. None of these provisions, other than the one relating to the note and mortgage, seem to have much materiality on the contention now urged, for they, in so far as they indicate any promise to pay, are confined to certain definite items concerning which Rudnick agreed to pay. The assumption by him of these particular obligations does not warrant a conclusion that he also agreed to pay another and entirely different obligation amounting to $463,000. That liability, with the knowledge and consent of all parties, was assumed by Baer, acting as "a straw." Transfer of realty, by means of a straw, is a common and recognized method which is adopted for the well known purpose of avoiding personal liability of the person for whom the straw is acting. *Perlmutter* v. *Holsberg*, 282 Mass. 421. *Exchange Realty Co.* v. *Bines*, 302 Mass. 93. The plaintiff contends that Baer was acting for Rudnick who, under the terms of the agreement, was to have a conveyance of the property to himself "or a nominee acting for him." These words must be given appropriate effect. The meaning to be attributed to them must be determined with reference to their context and to the general aim and object of the contract of which they are a part and to the circumstances attending the execution of the contract. They are not entitled to special emphasis but they must be given such effect as a fair construction of the entire contract shows the parties intended they should have. *Crimmins & Peirce Co.* v. *Kidder Peabody Acceptance Corp.* 282 Mass. 367. *Radio Corp. of America* v. *Raytheon Manuf. Co.* 300 Mass. 113. *Charles I. Hosmer, Inc.* v. *Commonwealth*, 302 Mass. 495. Such a designation of a straw may be accurate in describing the relationship of one to the principal for whom he is acting merely as a conduit in the transfer of realty, yet it is not sufficient to fasten liability upon Rudnick for the payment of the note, because the contract does not impose any liability upon him for any default by Baer, and the transaction of business

through one known to be a straw is persuasive evidence that the parties did not intend that any personal liability was to be assumed by the person for whom the straw was acting. *Exchange Realty Co.* v. *Bines,* 302 Mass. 93.  *Underwood* v. *Patrick,* 94 Fed. 468.  *State* v. *Reynolds,* 245 S. W. 1065.

It is the contention of the plaintiff that Baer was more than a mere straw, and that she had undertaken an obligation different from that usually assumed by a straw as an agent of Rudnick.  It points to the last paragraph of the contract wherein Baer, for a valuable consideration paid by the bank and Rudnick, covenanted with both that she would observe such terms of the contract as were to be performed by the owner.  The contract did not impose any obligation upon subsequent owners as such to pay the mortgage note and, consequently, this paragraph did not in any way affect any relation between Baer and Rudnick on account of the execution of the note and mortgage by her.  The purpose of the parties in inserting this paragraph was to insure performance of certain items of the contract by subsequent owners.  This is still clearer if the circumstances attending the execution of the contract are considered.  At that time the parties to the contract contemplated the formation of a new corporation which was to take a conveyance of the property from Baer.  Such a conveyance was in fact made in about a week after the contract was signed, and this corporation held the property until the foreclosure of the first mortgage in September, 1935.  This provision of the contract negatives any claim that the bank was dealing with Rudnick as the owner of the property and, in the next place, it is consistent with the tenor of the entire contract that the parties did not intend that Rudnick should be bound either directly or indirectly to pay the mortgage note.  The natural meaning of the terms of the contract, when applied to the situation to which they relate, shows the absence of any intent by the parties that Rudnick should be personally liable for the payment of the mortgage note.  *Clark* v. *State Street Trust Co.* 270 Mass. 140.  *Sullivan* v. *Massachusetts Catholic Order of Foresters,* 302 Mass. 246.  *Redden* v. *Ramsey,* 309 Mass. 225.

The plaintiff concedes that the contract of November 10, 1931, is free from ambiguity. It is, therefore, not entitled to have the conduct of the parties in the performance of the contract considered in determining its construction. Such conduct can only be given weight in ascertaining the true meaning of a contract which is couched in doubtful language. *New York Central Railroad* v. *Stoneman,* 233 Mass. 258. *Crowe* v. *Bixby,* 237 Mass. 249. *Raytheon Manuf. Co.* v. *Radio Corp. of America,* 286 Mass. 84. *Anderson* v. *Sopp,* 295 Mass. 97.

The judge upon the reported evidence was not plainly wrong in failing to find that Baer, in executing and delivering the note and mortgage, was acting for the accommodation of the bank or that they were delivered upon a condition that was not performed or in finding, as he did, that she was liable for the balance due on the note. *Perlmutter* v. *Holsberg,* 282 Mass. 421. *Tanners National Bank of Woburn* v. *Dean,* 283 Mass. 151. *Waltham Trust Co.* v. *Cincotta,* 293 Mass. 272. *Leonard* v. *Woodward,* 305 Mass. 332.

The bank cannot enforce the promissory note given by Baer against Rudnick because he was not a party to it. G. L. (Ter. Ed.) c. 107, § 40. *Bank of British North America* v. *Hooper,* 5 Gray, 567. *Agricultural National Bank of Pittsfield* v. *Great American Indemnity Co.* 287 Mass. 414. But it contends that, Baer having been found liable upon the note which she made and delivered within the scope of her employment as an agent of Rudnick, it is entitled to reach and apply in satisfaction of the indebtedness of Baer her right to indemnification and exoneration by Rudnick. An agent who has incurred a liability or sustained a loss in properly executing the instructions of his principal has a right to look to the latter to exonerate him from such liability or reimburse him for the loss. *Greene* v. *Goddard,* 9 Met. 212. *Durant* v. *Burt,* 98 Mass. 161. *Stegemann* v. *Kelley,* 267 Mass. 450. *Williams* v. *Commercial Trust Co.* 276 Mass. 508. The person to whom the agent has incurred a liability in the proper execution of his agency can reach the right of the agent to be exonerated by his principal in

satisfaction of his claim against the agent. *Evans, Coleman & Evans, Ltd.* v. *Pistorino*, 245 Mass. 94.

The principle upon which the bank relies is applicable where one, who has been required to pay a debt for which he was secondarily liable, can compel its payment by the primary debtor. It contends that as between Baer and Rudnick the latter was bound to pay the balance due on the mortgage note. There was no evidence of any express agreement between them that he would exonerate her from any liability or indemnify her for any damage sustained. Where the specific terms of an agency are not disclosed by the evidence, then the existence of such an obligation upon the part of the principal depends upon the purpose for which the agent is appointed, the nature of the work which he is to undertake, and what risks in the performance of his duties may be fairly understood, in the light of established business practices, to be assumed by the agent. If it appears that all the parties to the transaction knew that the intervention of the agent was entirely for the purpose of avoiding personal liability upon one of the parties, then it is difficult to see how such an agent could have a valid claim against his principal to be exonerated from liability, or how a third person, who has entered into a written contract with such an agent and the principal for the transfer of a parcel of real estate and accepts the note of such agent although the contract does not bind the principal to pay it, can successfully claim that the agent or straw was not primarily, but only secondarily, liable on the note and seek to reach and apply the right of the straw to compel payment of the note by the principal. It has been recently said, in a case where recovery was sought for the balance due upon a mortgage note executed by a straw, that a straw is usually financially irresponsible and does not ordinarily expect to be exonerated or indemnified, that the party conducting business by means of a straw does not expect to incur any personal liability out of the transaction, and that this is understood by all the parties concerned in the transaction. *Deitrick* v. *Ulin*, 33 Fed. Sup. 1001. *Underwood* v. *Patrick*, 94 Fed. 468. *State* v. *Reynolds*, 245 S. W. 1065.

The bank was not dealing with Baer alone but dealt with her in accordance with a written agreement to which they and also Rudnick were parties. The right of exoneration does not arise out of the performance of a contract where the contract itself shows that the parties did not intend that such right should result, or where to invoke such right would amount to the alteration of a contract by imposing upon one of the parties an obligation that none of the parties to the contract ever intended should be imposed. Here the contract itself and its performance by a straw in so far as the note and mortgage were concerned manifest an intent by all the parties to the written contract that Rudnick should not be held responsible for the payment of the note. Accordingly, the plaintiff cannot impose such a liability upon him. *Duke* v. *Kilpatrick*, 231 Ala. 51. *Capen* v. *Garrison*, 193 Mo. 335. *Acer* v. *Hotchkiss*, 97 N. Y. 395. *Bater* v. *Cleaver*, 114 N. J. L. 346. *Southwestern Surety Ins. Co.* v. *Pacific Coast Casualty Co.* 92 Wash. 654. *Ashton Jenkins Ins. Co.* v. *Layton Sugar Co.* 85 Utah, 333.

There was no error in ordering a decree against Baer for the amount due on the note and in ordering the bill dismissed against Rudnick; and a decree is to be entered in accordance with such order, bringing the amount due from Baer up to the date of the new decree.

*Ordered accordingly.*