163 F.2d 379 (1947)
In re CHILDS CO.
BRODSKY
v.
FINN.
No. 229, Docket 20537.
Circuit Court of Appeals, Second Circuit.
July 10, 1947.
*380 Count & Picket, of New York City (Edward Ross Aranow and Morway Picket, both of New York City, of counsel), for appellant.
Lorenz, Finn & Lorenz, of New York City (James J. Geraghty, of New York City, of counsel), for appellee.
Before L. HAND, SWAN, and CLARK, Circuit Judges.
SWAN, Circuit Judge.
In the reorganization proceedings of Childs Company the bankruptcy court conducted a judicial sale at which the appellant, Irving Brodsky, became the successful bidder for improved real estate known as 108-110 West 34th Street, New York City. The vendor was 108 West 34th Street Corporation, a subsidiary of Childs Company. The debtor's trustee had caused this subsidiary to enter into a contract of sale, dated February 1, 1946, with a prospective purchaser but the contract was subject to the court's approval and was to be annuled if a better offer were obtained. By petition of February 19, 1946 the trustee brought on the hearing of March 19th at which approval of the conditional contract of February 1st was to be considered and other bids received. At this hearing the highest bid was made by Brodsky and the property was knocked down to him at the price of $775,000, of which $180,000 was to be cash, $225,000 was to consist of a purchase money second mortgage to be executed by the purchaser, and $370,000 was represented by the existing first mortgage, subject to which the title was to be conveyed. As the successful bidder, Brodsky was directed to make a $30,000 deposit, which he did, and to enter into a formal contract the terms of which were to be identical with those of the contract of February 1st except for the increase in the purchase price and the elimination of the provision abrogating the contract in case of a higher bid.[1] Instead of signing a formal contract himself, Brodsky caused a contract of purchase to be executed by his nominee, Molly Weingarten, and this contract was approved by the court by order dated April 26, 1946. Thereafter, on account of alleged defects in title, Brodsky instructed Weingarten's attorney to refuse to carry out her contract of purchase and to demand the return of the $30,000 deposit. In November 1946 the trustee began the present proceeding, petitioning for an order adjudging that the title tendered to Weingarten was in all respects good and marketable, holding Brodsky in contempt for failing to consummate his successful bid accepted at the sale conducted by the court on March 19, 1946, and granting "such other and further relief in the premises as may be just and proper." The petition was answered by Brodsky and, after hearings, the court entered the order appealed from. This adjudged that the objections to title raised by Brodsky and his nominee were frivolous, that the title tendered by the trustee was good and marketable, and that Brodsky be directed to consummate his bid for the premises "by taking title or causing his nominee, Molly Weingarten, to take title thereto in accordance with the terms agreed upon in the agreement dated April 22, 1946."
The appellant's objection to title was based upon an alleged misrepresentation at the judicial sale as to the amount of the assessment upon the property. This, he contends, entitled him and his nominee *381 to rescind the contract of purchase. The representation relied upon was contained in the trustee's petition of February 19, 1946, which brought on the hearing at which bids were received, and was in substance that the property "was assessed for real estate tax for the year 1945-1946 at land $560,000, total $737,000."[2] This statement was not strictly accurate. The property being offered for sale had a frontage of 47 feet 3 inches on West 34th Street. The title search disclosed that the city's Tax Map placed 47 feet of the property in Tax Lot No. 49 which was assessed at $737,000. The remaining three inches, however, had erroneously been placed by the city in adjacent Tax Lot No. 45 and was assessed as part of that parcel. Correction of this error would result in increasing by a small amount the future assessments of the lot sold.[3] But the error did not affect title and was relevant only to future operating expenses, increasing them in an insignificant amount. The same paragraph of the trustee's petition of February 19th which referred to the tax assessment also stated the operating expenses, exclusive of taxes, to be $33,886.67. At the judicial auction, questions were asked about the operating expenses and the bidders were informed by the trustee: "These are not representations," and "This information, to the best of our knowledge and belief, is correct." The court then said: "It is no part of the contract, however, and no representation." It is not unreasonable to suppose that the court's statement referred to all the information given in paragraph 14 of the trustee's petition of February 19th, that is, to the information regarding the tax assessment as well as that regarding other expenses. Apparently the judge himself so understood it, for his opinion in the present proceeding states that neither the trustee's petition of February 19th, nor the circumstances occurring at the time of the sale "support the respondent's contention that a representation concerning the tax assessments was made." On the record before us we cannot say that this finding was clearly erroneous. Hence the rule of caveat emptor applied to the sale and the purchaser was not justified in repudiating the contract because of the error in the assessment. See In re Frasin, 2 Cir., 201 F. 343; In re Miltones, Inc., 2 Cir., 286 F. 806, 809.
The appellant argues that the order cannot stand because the trustee, who had the burden of proof, offered no evidence. But the petition and answer made a prima facie case. The answer admitted that the appellant was the high bidder at the judicial sale, that he deposited $30,000 pursuant to the order of the court and caused Molly Weingarten to sign a contract as vendee, which the court approved, and that he instructed her attorney to reject the title solely because of the assessment situation. As demonstrated in the above discussion, that was no justification. Consequently the trustee was entitled to relief, since the summary jurisdiction of the bankruptcy court to give redress against a delinquent purchaser at a bankruptcy sale is unquestioned. In re Rival Knitting Co., 2 Cir., 289 F. 960, 963; In re Dallek Bros., D.C.S.D.N.Y., 8 F.Supp. 610, 612.
However, the relief granted was broader than that to which the trustee was shown to be entitled upon this record. The acceptance by the court on March 19, 1946 of Brodsky's bid contemplated the execution of a formal contract between the vendor and the purchaser and the approval thereof by the court. The contract which the court approved on April 26th was not between the vendor and Brodsky but between the vendor and Molly Weingarten. *382 It is familiar practice in real estate transactions,[4] and particularly when a purchase money mortgage is to be given, for the real purchaser to take title in the name of a nominee or "dummy" who will execute the mortgage; thereby the real purchaser avoids personal liability for any deficiency judgment in case the mortgage is foreclosed. See Briggs v. Partridge, 64 N.Y. 537, 21 Am.Rep. 617; Crowley v. Lewis, 239 N.Y. 264, 146 N.E. 374; Underwood v. Patrick, 8 Cir., 94 F. 468, certiorari denied, 175 U.S. 726, 20 S.Ct. 1022, 44 L.Ed. 338; National Refining Co. v. Continental Develop. Corp., Mo.Sup., 189 S.W.2d 551; Straw Men in Realty Transactions, 25 Washington Univ.L.Q. 232. In such cases the vendor usually demands a down payment believed to be large enough to insure against the mortgagor's default, and where the mortgagee knows he is dealing with a "dummy," he is actually contracting for the land as his sole security. See 43 Yale L. J. 140, 141. In the case at bar, Brodsky deposited $30,000 but, instead of assuming personal contractual obligations, he offered the vendor a contract signed by Weingarten, and this was accepted by the vendor and approved by the court. On the record before us we can regard this only as a substitution, with the court's approval of Weingarten's obligations for those which might have been demanded from Brodsky. By accepting Brodsky's nominee as the only promisor the vendor must be understood as consenting to look to the $30,000 deposit as all he is to get from Brodsky. If that was not the intended result the trustee should have offered proof of what it was. In the case of In re Crosby Stores, 2 Cir., 65 F.2d 360, this court said that the principle of "integration," while especially applicable to judicial orders, does not preclude proof of a subsequent supplemental agreement nor the correction of an order not truly expressing the contract of the parties with respect to the sale of a bankrupt's property. There the trustee offered no proof on either point and was held bound by the order of sale. Here also we think the contract approved by the court on April 26 fixed the rights of the parties; and no amendment of that order has been obtained, nor any supplemental agreement proved. Strange to relate neither a copy of the contract between the vendor and Molly Weingarten, nor of the order approving it, appears anywhere in the record.[5] But the record does disclose that she was not the agent of an undisclosed principal but an avowed "dummy." Consequently we fail to see any basis for holding that Brodsky must consummate his bid "by taking title or causing his nominee, Molly Weingarten" to do so "in accordance with the terms agreed upon in the agreement dated April 22, 1946." That agreement was between the vendor and Weingarten; it imposed no obligations on Brodsky. The only relief to which the trustee is shown to be entitled as against him is the forfeiture of his interest in the $30,000 deposit because of Weingarten's default in performance of her obligations under her contract with the vendor. Such forfeiture must be without prejudice to her contractual right to have the sum applied as a payment on account of the purchase price should the trustee or the vendor hereafter seek specific performance or damages against her. In the present proceeding no relief can be had against her without amendment of the trustee's petition in order to make her a party.
Accordingly the order must be reversed and the cause remanded for entry of an order in conformity with the foregoing opinion, and with leave to the petitioner, if he so desires, to amend his petition to seek relief against Weingarten. Each party is to bear his own appellate costs.
NOTES
[1] The February 1st contract was submitted to the district judge at the March 19th hearing but the record does not contain a copy of it. However, its terms are described in the trustee's petition of November 1946 initiating the present proceeding.
[2] Strange as it seems, the record does not contain the trustee's petition of February 19, 1946, although it was before the court at the judicial sale and both parties frequently refer to it in their briefs. The above-quoted words regarding the assessment are taken from the trustee's brief which purports to set forth paragraph 14 of the petition of February 19th and is not disputed by the appellant.
[3] The assessment of $737,000 on a lot 47 feet wide would figure out at the rate of $1,308.51 per inch of frontage, and the increase in taxes by including the additional three inches would probably be about $100.
[4] See Judge Lehman's dissent in Fraw Realty Co. v. Natanson, 261 N.Y. 396, at page 410, 185 N.E. 679.
[5] Brodsky's answer to the trustee's petition initiating the present proceeding alleges that the order of April 26th recites: "* * * and the Court having directed said Irving Brodsky to deposit or cause to be deposited with the petitioner the sum of $30,000 on account of the purchase price of said premises, and to enter into an agreement or cause an agreement to be entered into for the sale and purchase of said premises upon the terms contained in the aforesaid purchase agreement, except the purchase price * * *". No doubt "the aforesaid purchase agreement" was the one mentioned in the trustee's petition of February 19th. See note 1, supra.