Poy Lee *vs.* Nicholas D. Ravanis & another.

Middlesex.    October 7, 1965. — December 13, 1965.

Present: Wilkins, C.J., Spalding, Whittemore, Cutter, Kirk, Spiegel, & Reardon, JJ.

*Contract,* For sale of real estate.    *Straw.*

Where a contract for sale of real estate provided that the party agreeing to purchase was "hereinafter called the Buyer," that the property was "to be conveyed by a . . . deed running to the Buyer, or to the nominee designated by the Buyer," that "acceptance of a deed by the Buyer or such nominee" should be full performance of all obligations not specifically excepted, and that a portion of the purchase price should "be paid by the execution of a note and purchase money [second] mortgage . . . from the Buyer to the Seller," and in other provisions of the contract the word "buyer" should be interpreted as meaning "nominee" if the named buyer designated a nominee, and it appeared that the named buyer designated as nominee a corporation formed to take title to the property and to have no substantial assets other than the equity therein, and that the seller refused to convey the property unless the named buyer personally indorsed the corporation's mortgage note, which the named buyer refused to do, it was held that the word "buyer" in such note and mortgage provision of the contract meant "nominee," and that the named buyer was entitled to recover from the seller a deposit made by the named buyer and certain expenses incurred by him in connection with the transaction.    Cutter, J., joined by Spalding, J., dissenting.

Contract.    Writ in the Superior Court dated October 31, 1962.

The action was heard by *Paquet, J.*

*Samuel Susser (Harris Altman* with him) for the plaintiff.

*George A. McLaughlin, Jr.,* for the defendants.

Spiegel, J.    This is an action of contract to recover a deposit on the purchase of real estate and to recover damages for breach of a written agreement.    The case is before us upon a statement of agreed facts constituting a case stated.    The plaintiff has appealed from a "finding" constituting an order of judgment for the defendants.

The defendants entered into a written contract to sell to the plaintiff (Lee) six parcels of land. Lee was stated in the contract (art. 1) to be "hereinafter called the BUYER." The original agreement (schedule A) set the price at $75,000, on which $2,000 had "been paid as a deposit" on the day of the agreement and $47,000 was to be paid in cash upon delivery of the deed. The balance of the price ($26,000) was "to be paid by the execution of a note and purchase money mortgage" of $26,000 "from the Buyer to the Seller." The premises (art. 4) were "to be conveyed by a good and sufficient quitclaim deed running to the BUYER, or to the nominee designated by the BUYER by written notice to the SELLER at least seven days before the deed" was to be delivered.

It was further provided (art. 9) that the "acceptance of a deed by the BUYER or such nominee as the BUYER shall have designated as hereinbefore provided, shall be . . . a full performance" of all obligations under the agreement other than any obligations specifically excepted. The agreement made no other reference to any nominee of the buyer.

The agreement was modified "immediately after its execution" so that "Lee was to pay down" $5,000 in cash (including the $2,000 deposit). "The balance of the purchase price was to be financed by a first mortgage" of $44,000 "to be given to a bank and a second mortgage" of $26,000 "to be given to the" defendants. "In no other respect was . . . [the] agreement . . . modified."

Prior to the date set for performance, Lee's attorney informed the defendants' attorneys that Lee "was . . . forming a corporation for the purpose of taking title . . . which corporation would have no substantial assets other than the equity" in the six parcels to be conveyed. The attorney for the mortgagee bank and the defendants' attorneys "had no objections to conveying legal title to a corporation as long as the first and second mortgage notes were either made by" Lee individually or indorsed by him. Lee's attorney "stated that his client would not personally

Lee v. Ravanis.

make or endorse'' the notes. A short time later, Lee
''agreed to personally endorse the first mortgage note'' in
order to persuade the bank to take the first mortgage. Lee
continued in his refusal to personally indorse the second
mortgage note. On the date set for the conveyance, ''the
defendants were ready, willing and able to convey . . . to
. . . [Lee] or his corporate nominee if . . . [Lee] person-
ally . . . endorsed the second mortgage note.'' Lee's at-
torney, who had been informed that the defendants would
not make conveyance unless Lee individually indorsed the
second mortgage note, did not appear at the closing. Lee
paid the attorney for the bank $100 for his services in con-
nection with this transaction.

Lee's attorney demanded that the defendants refund to
Lee the $2,000 deposit. The defendants refused and, in do-
ing so, referred to art. 17 of the agreement.[1] Lee then
brought this action to recover the deposit and certain ex-
penses incurred by him in connection with the transaction.

''[T]he promissory note is a mere incident to the trans-
action and . . . the principal thing relied on is the mort-
gage. It is a very easy matter when reliance is intended
to be placed on the financial responsibility of the original
vendee to specify in the contract that in addition to the
mortgage his personal obligation shall be given.'' *Mont-
gomery* v. *DePicot*, 153 Cal. 509, 514. Schedule A is not a
sufficient specification of a requirement of personal liability.

Schedule A provides that $26,000 ''is to be paid by the
execution of a note and purchase money mortgage in said
amount from the Buyer to the Seller.'' Logically, this
clause requires both the note and the mortgage to be given
by the same person. Title to the property being in the
name of the ''nominee,'' the nominee, therefore, would be
the only one who could do this. A mortgage given by the
buyer where the record title to the property is in the name
of the nominee would hardly be acceptable to the seller.

---

[1] Article 17 reads, ''If the BUYER shall fail to fulfill the BUYER's agree-
ments herein, all deposits made hereunder by the BUYER shall be retained by
the SELLER as liquidated damages unless within thirty days after the time for
performance of this agreement . . . the SELLER otherwise notifies the BUYER
in writing.''

Lee *v.* Ravanis.

This construction of the word "buyer" to mean nominee in schedule A is not an isolated exception to the meaning of the word "buyer" in the agreement. For example, art. 5 of the agreement states that "if the title to said premises is registered, said deed shall be in form sufficient to entitle the BUYER to a certificate of the registration of the title." Obviously only the grantee can register the land. Therefore, if the parcel in question had been registered land the word "buyer" in that instance would have to mean nominee. Otherwise art. 5 would be meaningless.

Other provisions in which the word "buyer" is more logically interpreted as meaning the nominee are arts. 8A and 12.[2]

The defendants rely on our decision in *E. M. Loew's, Inc.* v. *Deutschmann,* 344 Mass. 765, *S. C.* 337 Mass. 42. They ignore the factual situation in that case which makes it readily distinguishable. In the *Loew's* case the record shows that the terms of the contract required the nominee to obtain a license to operate a motion picture theatre in order to take title or sign the note and the nominee failed to obtain such license. Further, the note tendered by the nominee differed in terms from that specified by the contract.

The case of *Lojo Realty Co. Inc.* v. *Estate of Isaac G. Johnson, Inc.* 227 App. Div. (N. Y.) 292, affd. 253 N. Y. 579, cited in the dissent involved an assignee rather than a nominee. A nominee has no "property in or ownership of the rights of the person nominating him." *Cisco* v. *Van Lew,* 60 Cal. App. 2d 575, 583–584. "It is a familiar practice in real estate transactions, and particularly when a purchase money mortgage is to be given, for the real purchaser to take title in the name of a nominee or 'dummy' who will execute the mortgage; thereby the real pur-

---

[2] Article 8A reads in part, "The BUYER shall have the election, either at the original or any extended time for performance, to accept such title as the SELLER can deliver to said premises in their then condition and to pay therefor the purchase price without deduction, in which case, the SELLER shall convey such title to the BUYER . . . ."

Article 12 reads in part, "The SELLER shall assign . . . insurance [on the premises] and deliver binders therefor in proper form to the BUYER at the time for performance of this agreement. . . ."

chaser avoids personal liability for any deficiency judgment in case the mortgage is foreclosed.'' *In re Childs Co.* 163 F. 2d 379, 382 (2d Cir.). ''The use of a nominee is uniformly recognized as an approved practice in limiting the liability of principals in real-estate transactions.'' *Barkhausen* v. *Continental Ill. Natl. Bank & Trust Co.* 3 Ill. 2d 254, 264. *Greenwald* v. *Marcus,* 3 Ill. App. 2d 495, 501. See *Central Trust Co.* v. *Rudnick,* 310 Mass. 239, 244. Unless the nominee executes the note without the indorsement of the buyer, the purpose of using a nominee will be frustrated. Except for some special circumstance we can see no purpose in any reference to a nominee if the buyer is obliged to incur liability on the mortgage and mortgage note.

We are of opinion that the word ''buyer'' in schedule A means ''nominee.'' This result fulfills the purpose of allowing the nominee to take title, makes explicit the requirement that the same person execute the note and mortgage, and avoids both illogical construction of and reading an additional sentence into the clause providing for the note and mortgage.

The plaintiff is entitled to recover his deposit and $100 for the damages which he suffered. Accordingly, the order for judgment is reversed. Judgment is to be entered for the plaintiff in the sum of $2,100.

*So ordered.*

CUTTER, J. dissenting. Mr. Justice Spalding and I are of the view that Schedule A of the agreement expressly called for the note of Lee himself, defined in the agreement as the ''BUYER.'' This is to us the import of the words, ''The balance of the purchase price . . . ($26,000.00) . . . is to be paid by the execution of a note and purchase money mortgage in said amount from the Buyer to the Seller.'' We think that this language means what it says and that the defendants were entitled to the personal note or indorsement of Lee, secured also by a second mortgage upon the conveyed locus.

The record indicates that Schedule A was language specially prepared for this agreement. With minor excep-

tions the balance of the agreement was on a printed form of the general type frequently sold by law stationers. If there is conflict between them, the specially inserted language is to be preferred to the printed language. See *King Features Syndicate, Inc.* v. *Cape Cod Bdcst. Co. Inc.* 317 Mass. 652, 654–655, and authorities cited; Restatement: Contracts, § 236 (e).

The sole references to a "nominee" in the agreement are (1) in art. 4 with respect to the quitclaim deed to be given, "running to the BUYER, or to the nominee designated by the BUYER by written notice to the SELLER at least seven days before the deed" was to be delivered, and (2) in art. 9, where it was said that the "acceptance of a deed by the BUYER or such nominee as the BUYER shall have designated . . . shall be . . . a full performance" of all but any obligations specially excepted in the agreement. These two special references to a "nominee," each made in addition to use of the word "BUYER," indicate to us that "BUYER" was to mean only Lee (defined as the BUYER), and that where any effect was to be given to acts of a nominee, or where benefits were to be conferred upon a nominee, that intention was expressed in specific terms.

There is some inconsistency between the provision (art. 4) that the BUYER may designate a nominee to take title and the provision of Schedule A that the BUYER is to give the note and mortgage. As the majority point out, if under art. 4 the BUYER selects a nominee to take title as grantee, then only that grantee can execute the second mortgage which we think Schedule A requires Lee to give. Even if a nominee should take title as grantee, however, the note could still be given by Lee (as Schedule A provides), or be indorsed by him. That note could be secured by the mortgage given by the nominee. See *Perry* v. *Miller,* 330 Mass. 261, 263–264. The resolution of the inconsistency, which seems to us most consonant with our view of Schedule A, would be to recognize the purpose of the defendants to be paid by a note from the "Buyer," Lee, and to provide by a mortgage from the nominee the security for which the agreement stipulated.

Lee v. Ravanis.

This case is unlike *Central Trust Co.* v. *Rudnick,* 310 Mass. 239, 241, where a purchaser "agreed to procure a conveyance of . . . property to himself 'or a nominee acting for him'; [and] that he or his nominee would execute a note." The agreement, as the original papers show, read, "He *or such nominee* shall . . . execute . . . a note" (emphasis supplied). To be sure, in the *Central Trust Co.* case, this court said (at pp. 244–245) that "the transaction of business through one known to be a straw is persuasive evidence that the parties did not intend that any personal liability was to be assumed by the person for whom the straw was acting." This principle, however, should not prevail in the face of the explicit provision of Schedule A.[1] Our interpretation of this provision seems to us consistent with the natural desire of the defendants to obtain assurance of payment of the purchase price. See Corbin, Contracts, § 1199 at pp. 387–388.[2]

The present controversy might easily have been avoided by an adequately definite provision in the agreement, either (a) that Lee himself must give, or become liable individually upon, the second mortgage note, or (b) that the note of a nominee would be acceptable. Obviously, in the light of the majority's decision, vendors in the future should protect themselves by wholly clear language concerning the form of payment or by striking out or modifying references in printed forms to the use of nominees.

---

[1] *In re Childs Co.* 163 F. 2d 379, 382 (2d Cir.), relied upon by the majority, is also distinguishable. There language similar to that in the *Central Trust Co.* case appears, but the court had before it a sale during reorganization proceedings, in which the judge had expressly approved the execution of a purchase contract by a "dummy" rather than by the successful bidder at the judicial sale. Similarly in *Barkhausen* v. *Continental Ill. Natl. Bank & Trust Co.* 3 Ill. 2d 254, 266, there was no express agreement (like that in Schedule A) to "justify an imposition of . . . personal liability."

[2] The situation of the assignee of a vendee is somewhat analogous to the situation before us. Where the original vendee's personal obligation is required (as in Schedule A) by the purchase agreement, the vendor cannot be compelled to accept the obligation of an assignee. See *Lojo Realty Co. Inc.* v. *Estate of Isaac G. Johnson, Inc.* 227 App. Div. (N. Y.) 292, affd. 253 N. Y. 579, 580. Cf. *Montgomery* v. *DePicot,* 153 Cal. 509, 512–514, where it was held that the agreement before the court (which called only for "a promissory note" without specifying the maker) did not require the personal obligation of the vendee. See also statement on rehearing, at p. 516.