THOMAS COSTELLO vs. PET INCORPORATED & another.[1]

Suffolk. May 11, 1983. — January 18, 1984.

Present: GRANT, BROWN, & SMITH, JJ.

*Contract,* For sale of real estate, What constitutes, Performance and breach. *Nominee. Jurisdiction,* Specific performance.

An agreement for the sale of real estate to a named buyer or his nominee could not be said to include an implied requirement either that the named buyer assume personal liability for certain tax and water charges or that the nominee meet certain standards of financial capacity. [385-386]

In the circumstances, a judge was not clearly wrong in concluding that a letter from the seller of certain real estate, delivered to the buyer with a signed form of purchase and sale agreement and purporting to "clarify" the agreement by expressing the seller's understanding that any nominee of the buyer would be "financially capable," did not convert the seller's acceptance into a counter offer but was, rather, a request for modification which did not prevent the formation of a contract whether or not the modification was accepted. [386-387]

An increase in the value of a parcel of real estate which did not result from any action of the owner after its breach of an agreement to convey the parcel did not constitute such a change in circumstances as would preclude a judgment requiring the owner to perform the agreement. [387-388]

Tax and water charges imposed upon a parcel of real estate during the time the owner was in breach of an agreement to convey it were to be borne by the owner, subject to such adjustments as the agreement provided. [388]

CIVIL ACTION commenced in the Superior Court on October 14, 1975.

The case was heard by *Zobel,* J.

*Erik Lund (Paul R. Schneider* with him) for Pet Incorporated.

---

[1] 16-24 West Street Company, Inc.

*Steven J. Cohen* for 16-24 West Street Company, Inc.
*Frederick J. Conroy* for the plaintiff.

BROWN, J. This is an appeal from a judgment of the Superior Court which required the defendant Pet Incorporated (Pet) to convey the property located at 16-24 West Street, Boston, to the plaintiff, Costello, or his nominee. The judgment also nullified a conveyance of the property by Pet to its codefendant, 16-24 West Street Company, Inc. (West).

*Factual Background.*

By 1975, the building in question (premises) had become an increasing burden for Pet. The annual bill from the city for taxes and water charges had risen to about $52,000, and the premises were vacant and deteriorating. Desiring to shed itself of the albatross, Pet placed the property on the market. In August, 1975, Costello made an offer to purchase the premises through a completed purchase and sale form agreement which was sent to a real estate broker, Carpenter & Company, Inc. (Carpenter). The essence of the proposed deal was a sale of the premises for an assumption by Costello (or his nominee) of unpaid tax and water bills from 1973 and 1974, for which the city had imposed a tax lien of approximately $14,000, as shown by a municipal lien certificate dated June 9, 1975. Charges for 1975 were to be apportioned as of the date of the delivery of the deed. Thus, the deal was to have had the unusual feature that the only money to be passed at the closing was to be from the vendor to the purchaser.

On August 29, Pet executed the agreement and notified Carpenter of this action by telephone; Carpenter in turn promptly notified Costello. Pet returned the completed form to Costello (by way of Carpenter) and included a cover letter which purported to "clarify" the agreement. The letter expressly stated that Pet did not "view this letter as an amendment or counter offer with respect to the Agreement or property since these matters are implicit in the Agreement but merely need clarification." In pertinent part, the letter expressed Pet's understanding that "Pet will convey the property to Thomas Costello, or his nominee,

*provided the nominee is financially capable*" (emphasis supplied). Costello denies that the requirement of financial capacity of the nominee was ever part of the agreement.[2] After Costello informed Pet that he would nominate himself as trustee for an as yet nonexistent realty trust, Pet "requeste[d] an indemnification agreement to be signed by Mr. Costello individually." This indemnification issue proved to be the crucial stumbling block that prevented the completion of the deal.[3]

On September 29, the date set for the closing,[4] the attorney acting for Pet informed Costello that he did not have authority to complete the transaction unless Costello first signed the indemnification agreement. Costello refused to do so, and the deal was not completed, although negotiations continued. A new point of conflict emerged as to which party would pay additional charges for the period from September 29 until the eventual closing date.[5] When Pet insisted that Costello bear this burden and reiterated its requirement that Costello sign the indemnification agreement, Costello filed this present action on October 14. Pet counterclaimed alleging breach of contract. On December 19, 1975, Pet attempted to settle the dispute by tendering to Costello a deed for the property as well as two checks which totalled some $26,000 to cover municipal tax and water charges to date. This offer, however, did not resolve the indemnification dispute because the deed was made out to

---

[2] The judge found that neither Costello nor anyone authorized to act for him was aware of this letter before September 12, 1975, some two weeks after Costello learned that his offer had been accepted.

[3] The other major disagreement that occurred by the time of the closing was whether Pet would endorse its check for its respective share of the current taxes and water charges to Costello or directly to the city. While the court below found that the terms of the agreement required Pet to make out its check to Costello, it appears that, at least shortly after the time set for the closing, Costello was willing to accept a check made out to the city.

[4] The closing was originally set for September 15, 1975, and extended by written agreement to September 29.

[5] The trial judge properly found that the agreement required Pet to assume these charges.

Costello individually. Costello refused the tender, and the property was sold on December 30, 1975, to the defendant West, which took with full notice of the pending litigation. West's sole asset was title to the premises.

Pet paid the city the outstanding taxes and water charges from 1973 and 1974 and some of those for 1975. Subsequent bills remained unpaid and apparently had accumulated to well over $200,000 by the time the judgment was entered in the trial court. The value of the property had also risen, however, and by Costello's own acknowledgment was over $400,000. After a jury-waived trial, the Superior Court judge, in a ruling favoring Costello, (1) set aside the transaction from Pet to West, (2) dismissed Pet's counterclaim, and (3) required Pet to transfer to Costello or his nominee a warranty deed either free of the accrued tax and water charges or with an amount of money sufficient to satisfy them. The original findings issued on August 5, 1982; they were amended in some minor respects on April 5, 1983.[6]

*The Contract and Its Breach.*

Costello's offer was presented in a purchase and sale form agreement which explicitly stated that Costello *or his nominee* would assume the outstanding tax and water bills. "The use of a nominee is uniformly recognized as an ap-

---

[6] Several postjudgment transactions have come to our attention, though many of their details are unknown. An outstanding tax debt of some $280,000 for the premises was paid to the city by an entity known as the Costello Trust. This payment was made to a "tax title account" pursuant to G. L. c. 60, §§ 60, 62, the city apparently having acquired title to the property at a tax sale. Further, Costello apparently has irrevocably designated another entity known as Bay West Realty Trust (Bay West) as his nominee under the court's order. Bay West also seems to have purchased a direct interest in Pet's chain of title to West. The fact that Bay West may well have assured itself — or some subsequent assignee — of ownership of the premises no matter what the outcome of this appeal does not make moot the controversy before us. The above transactions do not abrogate Pet's duty to transfer a warranty deed to Costello or his nominee, nor do they settle the issue of who is to bear ultimate responsibility for the taxes and water charges that accrued.

proved practice in limiting the liability of principals in real estate transactions." *Lee* v. *Ravanis,* 349 Mass. 742, 746 (1965), quoting from *Barkhausen* v. *Continental Ill. Natl. Bank & Trust Co.,* 3 Ill.2d 254, 264 (1954). The purpose of including the reference to the nominee would be frustrated unless the nominee were to be solely responsible for the outstanding liability. See *Lee, supra* (vendor held in breach of contract for refusing to convey property to nominee of purchaser unless purchaser accepted personal liability on a second mortgage given by the vendor). The nominee provision in the purchase and sale form is unambiguous,[7] and cannot be said to include an implied requirement that Costello assume personal liability or that the nominee meet certain standards of financial capacity. Cf. *Montgomery* v. *DePicot,* 153 Cal. 509, 514 (1908) ("It is a very easy matter when reliance is intended to be placed on the financial responsibility of the original vendee to specify in the contract that . . . his personal obligation shall be given").

Given the lack of ambiguity of the nominee provision in Costello's offer, the only substantial question presented here is the effect of Pet's purported acceptance of this offer and the return of the completed agreement with the letter of "clarification."[8] The inclusion of a cover letter containing terms at variance with a completed form agreement may in some circumstances convert an ostensible acceptance into a counter offer. See, e.g., *Gateway Co., Inc.* v. *Charlotte Theatres, Inc.,* 297 F.2d 483, 486 (1st Cir. 1961). How-

---

[7] The purchase and sale agreement before us contains a more explicit reference to the nominee's role in assuming the relevant debt than the one in *Lee,* which simply authorized a sale to a nominee. See further, the admonition of the dissenting opinion in *Lee:* "Obviously in the light of the majority's decision, vendors in the future should protect themselves by wholly clear language concerning the form of payment or by striking out or modifying references in printed forms to the use of nominees." *Lee, supra* at 748 (Cutter, J., with whom Spalding, J., joined, dissenting).

[8] Had the terms of the accompanying letter become part of the agreement between Pet and Costello, Pet might have been justified in insisting that Costello sign the indemnification agreement which would have served to guarantee the nominee's financial capacity.

ever, a request for a modification accompanying an accept-
ance does not prevent the formation of a contract where it is
clear that the offeree intended to accept whether or not the
modification was accepted. *Nelson* v. *Hamlin*, 258 Mass.
331, 340 (1927). See generally 1 Corbin, Contracts § 84, at
363-365 (1963).

The trial judge expressly found that "in sending the letter,
Pet desired to alter the terms of the Agreement, while at the
same time not dissolving the contractual undertaking which
the Agreement memorialized." The judge further stated
that "[c]olloquially speaking, the . . . letter sought to im-
prove the deal (from Pet's standpoint) without destroying it
altogether." Compare *David J. Tierney, Jr., Inc.* v. *T.
Wellington Carpets, Inc.*, 8 Mass. App. Ct. 237, 240 (1979).
We are unable to say that this finding is "clearly erroneous"
(see Mass.R.Civ.P. 52 [a], 365 Mass. 816 [1974]). Either on
the basis of this finding, or perhaps as matter of law (it is
unnecessary to decide which), a contract was formed which
included the unambiguous nominee provision.[9] Pet's in-
sistence that Costello sign the indemnification agreement
amounted to a repudiation of this contract, a breach which
was later confirmed by the conveyance to West. See *Lim-
pus* v. *Armstrong*, 3 Mass. App. Ct. 19, 22 (1975).
*Remedy.*

Specific performance of real estate contracts is appropri-
ate "in the absence of significant equitable reasons for refus-
ing such relief." *Raynor* v. *Russell*, 353 Mass. 366, 367-368
(1967). There is no evidence in the case before us of fraud,
overreaching, or inequitable conduct on the part of Costello
sufficient to render the judge's granting of specific perform-
ance an abuse of discretion.[10] See *Kaplan* v. *Bessette*, 357
Mass. 233, 235 (1970); *Allen* v. *Rakes*, 359 Mass. 1, 5-6

---

[9] We need not consider any possible ramifications of the fact that the
contents of the letter did not reach Costello until about two weeks after he
learned that his offer had been accepted. See note 2, *supra.*

[10] Costello's refusal to accept the December 19, 1975, tender was
justified, given the fact that it was to him individually, thus requiring him
to undertake personal liability for the tax liens if he accepted it.

(1971). Mere increase in the value of the property, which did not result from action of the defendant after the breach, is not the type of change in circumstances over time which would make an order of specific performance inequitable. Contrast *Gevalt* v. *Diwoky*, 319 Mass. 715, 716 (1946).

The only issue that remains is who should bear the burden of the tax and water charges that have accrued over the years. Pet and West argue that Costello will be unjustly enriched if he is allowed to reap the appreciation in the value of the premises without bearing this burden. See *Davis* v. *Parker*, 14 Allen 94, 104 (1867) (purchaser held entitled to specific performance was required to reimburse vendor for taxes paid during pendency of litigation in circumstances where purchaser stood to gain substantial benefit due to timber growth on property). We find that argument unavailing. A prerequisite to raising an unjust enrichment argument is that there have been "reasonable conflicting viewpoints on the law and facts." *Flynn* v. *Wallace*, 359 Mass. 711, 720 (1971). Here, Pet's breach was unequivocal, and Pet cannot now be heard to argue that Costello must bear the burden for the tax and water charges for the years he was wrongfully deprived of possession of the premises. *Id.* at 719-720, and cases cited therein. Costello is therefore entitled to payment for these charges, subject, of course, to an offset for those charges that he (or his nominee) would have assumed as his part of the original bargain.[11]

*Judgment affirmed.*

---

[11] The particular liability from years 1973 and 1974 that was to be assumed by Costello or his nominee was reduced from $13,925 to $6,568.40 through a tax abatement granted by the city some time in 1976. While the contract does not state who would be entitled to such an abatement, in the letter from Pet purporting to clarify the agreement, Pet itself states that Costello would be so entitled.