EDWARD F. SIMPSON vs. THEODORE W. VASILIOU,
administrator.[1]

No. 89-P-759.

Middlesex. November 19, 1990. - January 10, 1991.

Present: PERRETTA, FINE, & IRELAND, JJ.

*Contract*, Sale of real estate, Performance and breach, Modification, Specific performance. *Real Property*, Purchase and sale agreement, Sale.

The prospective buyer of real estate under a purchase and sale agreement providing for a September 15, 1978, closing date, and for any extension of the closing date to be in writing, was not entitled to specific performance by virtue of the seller's failure to appear for closing on September 15 where the parties, on September 4, 1978, had orally agreed to extend the closing date to October 1, 1978, where neither party was ready to convey on September 15, despite the buyer's appearance, where the seller had not previously repudiated the agreement, and where the buyer's action for specific performance was commenced on September 29, 1978, without either party having sought to arrange a closing on or about October 1, 1978. [701-702]

CIVIL ACTION commenced in the Superior Court Department on September 29, 1978.

The case was heard by *Charles M. Grabau*, J.

*Gary D. Buseck* (*Robert T. Gill* with him) for the plaintiff.

*Barbara L. Moore* for the defendant.

FINE, J. The buyer brought this action against the seller for specific performance of a commercial real estate purchase and sale agreement. After a jury-waived trial, a Superior Court judge denied specific performance. We affirm the judgment.

---

[1]The seller, William T. Vasiliou, died on November 26, 1988, and Theodore W. Vasiliou was appointed administrator of his estate.

According to the judge's findings, supplemented to a minor extent by uncontested evidence offered on behalf of the buyer, the essential facts are these. In June of 1978, the parties entered into a purchase and sale agreement concerning multi-family residential real estate in Falmouth. The agreement provided for a $275,000 purchase price, $10,000 to be paid at the time of agreement and to be held in escrow by the broker as a deposit. The agreement provided, further, for a September 15, 1978, closing date, time being of the essence, and for any extension of the closing date to be in writing. Eleven days before the closing date, on September 4, 1978, the parties met to discuss a request from the buyer for an extension of the closing date to October 15, 1978. A writing providing for such an extension was prepared. Accepting responsibility for causing the buyer a two-week delay, the seller agreed orally to extend the closing date to October 1, 1978, and to consider, after conferring with his attorney, whether to sign the writing calling for a further extension to October 15, 1978. The seller never signed the written extension.

Despite those discussions and although he had been informed that the seller was not going to appear, on September 15, 1978, the buyer appeared at the Barnstable County registry of deeds. He had the seller paged, but there was no response. The buyer was not ready at the registry with the funds or other necessary documents and information to make the purchase. Evidence was presented through Nathaniel B. Baker, a bank president, that the buyer had received a mortgage commitment from the bank. Later the same day, the buyer's attorney wrote the seller a letter informing him that, because of the seller's failure to appear at the registry to consummate the transaction, the buyer was instituting litigation to recover damages for breach of contract. On September 27, 1978, the buyer authorized a $1,500 payment out of the escrowed deposit to pay the attorney who would be filing a suit for specific performance. The present action was commenced on September 29, 1978, alleging a breach of the purchase and sale agreement by virtue of the seller's failure to appear

at the registry on September 15. Neither party sought to arrange a closing on or about October 1, 1978. By the time of trial in 1987, the property, despite the absence of improvements, had increased in value to well over $1,000,000.

The judge's conclusions and rulings, on the basis of which he entered judgment for the seller, were as follows: "[O]n September 4, 1978, the parties had agreed orally to extend the closing date to October 1, 1978. Neither [party was] ready to convey on September 15, 1978, despite [the buyer's] appearance at the [r]egistry . . . . [The seller's] failure to appear . . . which was expected by [the buyer . . . ], was interpreted as a repudiation of the purchase and sale agreement . . . . [The seller] had never said that he would not convey." We reach the same result.

The judge found that, because the buyer was not ready to close on September 15, when he appeared at the registry of deeds and had the seller paged, and the seller had not previously repudiated the agreement, the seller was not in default as a result of his failure to appear at the registry. Moreover, the buyer knew in advance that the seller was not going to appear on September 15. While we agree with the buyer's contention on appeal that, if the closing date remained set for September 15 and he had prior notice that the seller would not appear, he would not have been required to appear at the registry, let alone with the funds, documents, and information necessary to consummate the transaction, see *Leigh v. Rule,* 331 Mass. 664, 668 (1954), the fact remains, and the judge found, that on September 4, at the request of the buyer, the parties had agreed to extend the closing date to October 1.

Although at trial the buyer denied the existence of an agreement to extend, the finding was supported by the testimony of the seller and the real estate broker. An oral extension of a closing date may be valid, notwithstanding a requirement in the purchase and sale agreement that any such extension be provided for in writing. Parties, in such circumstances, may orally waive the requirement of a writing. See *Close* v. *Martin,* 208 Mass. 236, 241 (1911); Williston, Con-

tracts § 1828 (3d ed. 1972). Compare *First Pa. Mortgage Trust* v. *Dorchester Sav. Bank*, 395 Mass. 614, 625 (1985).[2] Thus, as of September 15, notwithstanding the events at the registry, both parties remained obligated to perform the purchase and sale agreement on or before October 1.

The buyer's complaint for specific performance alleged a breach of the purchase and sale agreement by the seller on September 15, and his theory at trial, consistent with the allegations in the complaint, was that he was ready, willing, and able to perform, and that the seller's failure to close on that date placed the seller in default. The buyer also maintained at trial that there had been no valid extension of the closing date. Because the closing date, according to the judge's findings, was extended to October 1, the buyer failed to establish a breach on September 15 as alleged in the complaint.

On appeal the buyer contends that, even if the date for performance had been extended to October 1, he is still entitled to specific performance because he was ready, able and willing to tender the purchase price on that date. Not surprisingly, the judge's findings reflect only the theory presented at trial. Thus, the judge made no finding on the credibility of the testimony that on either September 15 or October 1 the buyer had the ability to purchase the property as a result of mortgage financing or otherwise. Such a finding with respect to October 1 would be crucial to the buyer's new theory. Although some evidence was presented at trial touching on events between September 15 and October 1, we are not required to consider the buyer's argument relating to the effect of that evidence, and we decline to do so. See *Royal Indem. Co.* v. *Blakely*, 372 Mass. 86, 88 (1977); *Matthews* v. *School Comm. of Bedford*, 22 Mass. App. Ct. 374, 379 (1986). Had the buyer relied on the new theory at trial, the

---

[2] The Statute of Frauds was not raised. The manner of, or time for, performance of a written contract within the Statute of Frauds may be modified orally. See *Lampasona* v. *Capriotti*, 296 Mass. 34, 38 (1936); *Rex Lumber Co.* v. *Acton Block Co.*, *ante* 510, 515-516 (1990).

seller might have conducted his defense differently, resulting in a different record before us.[3]

*Judgment affirmed.*

---

[3]It is doubtful, in any event, that the evidence concerning events between September 15 and October 1 would have justified an order for specific performance. The buyer's actions between September 15 and October 1 probably did not amount to such a repudiation of the agreement as would excuse the seller from further performance. The seller decided not to go forward with the transaction after receiving the buyer's letter threatening litigation, but the letter did not excuse the seller from performing. There is no evidence, however, that the seller communicated his decision not to perform, or in any other way repudiated the agreement, before October 1. See *Bucciero* v. *Drinkwater*, 13 Mass. App. Ct. 551, 555 (1982); Restatement (Second) Contracts § 250 (1981). Contrast *Leigh* v. *Rule*, 331 Mass. at 668-669; *Costello* v. *Pet Inc.*, 17 Mass. App. Ct. 382, 387 (1984). Except for the filing of the lawsuit one day before the end of the extended period for performance, without tender of the purchase price, contrast *Nickerson* v. *Bridges*, 216 Mass. 416, 421 (1914), neither party made a tender of performance between September 15 and October 1. The closing date remained an essential term of the contract even after the oral extension. See *American Oil Co.* v. *Katsikas*, 1 Mass. App. Ct. 437, 440 (1973). Contrast *Church of God in Christ, Inc.* v. *Congregation Kehillath Jacob*, 370 Mass. 828, 832 (1976). To place the seller in default, the buyer was required, before the deadline for performance, to manifest that he was ready, able and willing to perform by setting a time and place for passing papers or making some other concrete offer of performance. See *Leigh* v. *Rule*, 331 Mass. at 668; *LeBlanc* v. *Molloy*, 335 Mass. 636, 637-638 (1957); *Mayer* v. *Boston Metropolitan Airport, Inc.*, 355 Mass. 344, 354 (1969). The buyer apparently did not do so. Nor is it clear, given the delays in bringing the case to trial, that, if there was a breach by the seller, specific performance, in the circumstances, would be equitable. Compare *Raynor* v. *Russell*, 353 Mass. 366, 367 (1967); *Costello* v. *Pet Inc.*, 17 Mass. App. Ct. at 388.