**In the Matter of Jerald Mac SPILSBURY, aka Jerry Spilsbury, Debtor.**

**Frank and Sue CARACCIOLO, Plaintiffs,**

**v.**

**Jerald Mac SPILSBURY, aka Jerry Spilsbury, Defendant.**

**Bankruptcy No. BK–LV–80–636. Adv. No. 800089.**

United States Bankruptcy Court, D. Nevada.

Aug. 6, 1980.

Order Denying Motion to Alter or Amend Judgment Aug. 21, 1980.

Jones & Holt by Robert C. Jones, Las Vegas, Nev., for plaintiffs.

Rose, Edwards, Hunt & Pearson, Ltd. by Keith Edwards, Las Vegas, Nev., and Lewis & Roca by Gerald K. Smith, Phoenix, Ariz., for debtor.

## OPINION AND DECISION

BERT GOLDWATER, Bankruptcy Judge.

This is an adversary action by the debtors in possession in a pre–Code Chapter XII case to vacate the automatic stay in this Chapter 11 case filed by the buyer of real property through a Court confirmed sale in the Chapter XII case. Defendant Spilsbury purchased land and a casino building in Las Vegas from plaintiffs' Chapter XII estate pursuant to a Court order confirming the sale on February 7, 1979.

The Bankruptcy Court's confirmation order in the Chapter XII case provided for a free and clear sale with a wraparound note and deed of trust in the sum of $4,035,000, following a down payment to plaintiffs' estate of $50,000 in cash and conveyance of land owned by Spilsbury in which his equity, it was agreed, was $385,000 (making a total "down payment" of $435,000). Nine months after escrow a balloon payment of $2,000,000 was to be made by the buyer out of which payment, taxes, lien claimants, and claims of lessors were to be paid in the Chapter XII case. The lien claimants and lessors of property deposited quitclaim deeds and releases in escrow to be returned to them in the event of default and foreclosure. Provision was made in the Court's order for subordination of the $2,065,000 balance following the balloon payment, such subordination to be not more than $2,000,000 with amortization over a period of 15 years at 12% interest.

The parties fully expected that Spilsbury would obtain a gambling license from Nevada authorities in short order and provided that payment of interest only of $40,650 per month would commence one month after the receipt of a gambling license until the time for making the balloon payment of $2,000,000.

After receiving the deed and executing the note and deed of trust on March 23, 1979, Spilsbury was met with a refusal by the Nevada gambling officials to issue a license unless he could show that he could finance the balloon payment due in nine months. The "money market" at the time reflected the highest interest rates in recent history and a shortage of available loans. As a result, Spilsbury was unable to finance the balloon payment, failed to obtain a gambler's license and defaulted.

Plaintiffs then applied to the Bankruptcy Court in their Chapter XII case for authority to foreclose. At the time of that hearing, Spilsbury requested the Chapter XII Court to approve a proposed plan of payment which included a written agreement with plaintiffs' chief secured creditors and lessors. The Bankruptcy Judge in that case refused to entertain Spilsbury's plan over plaintiffs' objections and authorized the Chapter XII debtors to proceed with foreclosure.

Spilsbury then filed this Chapter 11 case.

### I.

The first issue is whether the automatic stay of Section 362 will stay a foreclosure authorized by the Court in a Chapter XII case where the debtor in the Chapter 11 case had been the buyer of real property from the estate of the debtors in the Chapter XII case and had defaulted in payment of the terms of a note and deed of trust executed pursuant to a Court order confirming the sale.

A sale made pursuant to the order of the Bankruptcy Court must meet certain required provisions. Plaintiffs' Chapter XII case was filed in 1975 and the secured creditors, lien claimants, lessors and other creditors in that case were protected by the special conditions of the order confirming the sale. A judicial sale under Chapter XII is made pursuant to Section 70 of the former Act and subject to Rule 606 of the Bankruptcy Rules of Procedure. There are clear safeguards which must be observed, almost all of which have to do with protecting creditors. See discussion in 4B *Collier*

on *Bankruptcy* (14th ed. 1978) p. 1151, sections 70.98, et seq.

While plaintiffs in this case are the named secured creditors, it is plain and evident that the creditors in plaintiffs' Chapter XII case are the first and paramount beneficiaries of the note and deed of trust. It seems oppressive that these creditors, stayed in the Chapter XII case, can now be stayed again in the Chapter 11 case. Nonetheless, where the judicial sale was confirmed as a structured escrow with documents to be executed as ordered by the Court, such sale becomes an approved security transaction according to the provisions of the agreements authorized by the Court as distinguished from an exchange for cash between seller and buyer. Where an order confirming a sale directs delivery of a document of title and payment of cash by the buyer, the default of the buyer leaves the matter as a failure to perform the Court's order and generally the trustee or debtors may simply retain the deposit and a new sale is ordered. See *In re Childs Co.*, 163 F.2d 379 (2d Cir. 1947).

The confirmation in this case directed the terms of the sale as to the form and frame of the documents to be executed. Section 362(a)(3) operates as a stay to obtain property of the estate. The exceptions in Section 362(b), wherein the automatic stay does not operate, do not include a foreclosure by reason of a default in payment according to documents executed by a buyer from debtors in possession in a bankruptcy case.

Property of the estate in Spilsbury's Chapter 11 case includes all of his legal or equitable interest in property. [11 U.S.C. § 541(a)(1)] When the plaintiffs deeded the real property to Spilsbury he became vested with certain property interests subject always to the terms of the note and deed of trust which he executed.

■■■ This Court holds that the jurisdiction of the Chapter XII Court over the judicial sale does not insulate a foreclosure from the automatic stay created by the filing of a petition in Chapter 11 by the buyer where the foreclosure is for breach of conditions of payment contained in the sale documents executed by the parties pursuant to confirmation of the terms of the sale by the Court.

Converting a Court confirmed sale into contract documents of title with provisions for Nevada statutory foreclosure allows the property to escape the protective cloak of the selling Court as to the automatic stay in this Chapter 11 case. This bizarre circumstance, wherein the Chapter XII creditors can be stayed again, may only be prevented by the debtors retaining title documents and the selling Court reserving jurisdiction to terminate or enforce the sale in its order.

A bankruptcy case in the same Court ought not to be stayed by the filing of a second case in that Court by a buyer of property in the first case but nothing in the former Bankruptcy Act rescues the sale from the effect of the automatic stay of Section 362 of the new Code so long as the Chapter 11 debtor can be considered to have "property". To protect the creditors and debtors in the first case, the order of sale would have to withhold any right in the property, although the buyer may have other remedies or defenses as to his deposit or liability for deficiency.

The terms of the sale, however, cannot be changed so as to effect a "cram down" by the Chapter 11 Court; those terms set forth in the order of confirmation may only be modified by the Chapter XII Court.

## II.

Section 362(d) provides grounds in the alternative for relief from the automatic stay. Plaintiffs have asserted both grounds that (1) there is lack of adequate protection of plaintiffs' interest and (2) the Chapter 11 debtor does not have an equity in the property *and* such property is not necessary to effective reorganization.

The balance of principal due the Chapter XII debtors is $4,065,000 plus interest to August 5, 1980 of $681,565, making a total due of $4,746,565.

The husband plaintiff testified that the property was of a value of $4,500,000 and produced a representative for a cash buyer

for $3,750,000. The representative, Walter Rosenthal, is an engineer and real estate consultant well informed on the value of Las Vegas real estate. He found the land and buildings worth between 3½ and 4 million dollars based upon the market price of land in the area and the nature of the construction. The casino, called the "DeVille", has never been opened and operated. It is a freestanding building ready to be operated as a casino with an area which can be rented for some shops on the second floor or mezzanine. It is not a hotel and has no living accommodations common to casinos in Las Vegas. It has space for bars, gambling, cocktail lounge, and slot machines. It lacks adequate parking but is located in the prime area of many well known and successful hotels which have gambling casinos. Rosenthal testified that the income approach should not be used because the DeVille has no income record and income in gambling casinos depends entirely on the ability of the operator. Hence, he said the value must be the cost of the land and building on today's market. He acknowledged that an efficient operator should be able to pay $50,000 to $100,000 per month rent. Such rental would be more than adequate for expenses. The amount of rent needed to meet a lessor's expenses *and* amortize the debt would, of course, depend on the agreements to pay the debts against land, buildings, and equipment.

Defendant's witness as to value was Gary H. Kent, a qualified MAI appraiser. Kent found the property worth in excess of $7,000,000 from both a cost and an income approach. Kent's value under the cost approach for land, building and equipment was $4,609,616. To this he added $2,304,808 for "Entrepreneur's Profit, Cost Over–run contingencies & financing". The testimony regarding the latter item of cost does not square with the facts. Improvements were valued on a square–foot basis (14,000 sq. ft. at $95.15 and 11,085 sq. ft. at $81.15). Surely the square–foot cost covers the cost of overhead which includes the cost of money and profit. The additional amount should be disregarded as pure stuffing.

The income approach of defendant's appraiser is based upon average gambling income statistics which Nevada gambling officials have reported over past years. The total gross income is estimated at $6,462,-636. Defendant under proposed gambling leases would be entitled to rent of $360,000 as landlord and one–half the net income as a co–lessee with the operator of $824,294. From this defendant's net income after expenses (not including principal or interest) is estimated at $1,217,541. This is capitalized at a rate of .16 to show a leased value of $7,610,000. Such puffing makes a good show but the income approach for a business never opened must be approached with great caution. Defendant's memorandum contends that going concern value should be used to arrive at equity value. True, *In the Matter of Pembroke Manor Apartments*, 547 F.2d 805 (4th Cir. 1977) the Court cited with approval the United States Supreme Court case of *Consolidated Rock Products Co. v. Du Bois*, 312 U.S. 510, at 526, 61 S.Ct. 675, 85 L.Ed. 982 (1940) to the effect that earning capacity is the criterion for determining whether a plan is for the best interests of the creditors and feasible. The Circuit Court held erroneous a conclusion there was not equity based only upon liquidation value which does "not necessarily reflect the earning power of the property as a *going concern*;" (Court's emphasis). However, the *Pembroke Manor* case apartments were occupied 100% but reduced to 55% because of a 1974 business recession. There was also actual income records to be considered in *Matter of Pickett, Gardner, Landers & Associates*, 14 CBC 370 (N.D. Ga. 1977) where over $1,000,000 in rents had been collected during a twelve–month period. And in *Matter of Creed Brothers, Inc.*, 14 CBC 426 (S.D. N.Y. 1977), the Court considered accounts receivable in a going lumber business to arrive at the equity of the inventory and property.

The income approach for a new business based upon projections from the experience of businesses of like kind is fraught with variables. It must be received and weighed in the light of the condition of the economy,

the quality of the management, the sources of capital necessary to production of income, and the resiliency of the business to weather cycles of change in the seasons.

Nevertheless, Kent's testimony and appraisal is not completely improbable. Rosenthal agreed that with good management the lessee of the casino could pay up to $100,000 per month rent. This would amount to $1,200,000 per year before expenses of the lessor. Kent's gross rents are $1,525,439. There should be a fair estimate that the premises are worth a going concern value less than $7 million but more than $5 million if operated properly.

■ The equity of Spilsbury is thin and the protection for plaintiffs has very little cushion. The property has a value of not less than $4.5 million and not more than $5.5 million. There is accruing interest but taxes and insurance are being paid and the casino is being prepared for opening depending on financing and licensing. Inflation is likely offsetting accruing interest. There is adequate protection for plaintiffs at least for the minimum time permitted by law for a plan to be filed and considered by the creditors and the Court. See 11 U.S.C. § 1121. No further time should be allowed in view of the staggering amount of interest which will have accrued.

### III.

■ Even if there were no equity, the debtor in the Chapter 11 case has shown the property is necessary to an effective reorganization. The debtor presented a proposed experienced operator who, with his father, was willing to form a lessee entity with debtor to lease from the debtor. In addition, the debtor obtained a lease of additional parking and installed various fixtures and slot machines. While no leases were produced and no documents bearing upon acquisition of the fixtures and slot machines were shown, it was at least a showing of good faith that there is a reasonable possibility of a plan. Mere indispensability of the property to the debtor's survival and high hopes is not enough under Section 362(d)(2), but where the debtor has made a

showing that a reorganization may be successful and has made some constructive effort towards that goal, the stay should remain in effect. See *Automatic Stays Under the New Bankruptcy Law*, 12 U.Mich. L.J. 3 (1978).

### IV.

Judgment should be entered that the automatic stay shall terminate, without further order of this Court, on November 10, 1980, at 5:00 p. m., unless, prior to that day and time, defendant-debtor shall have filed a plan which provides for the payment and performance, among other things, of the exact terms of the sale as ordered by the Bankruptcy Court in the Chapter XII case which sale was structured according to that Court's order and constitutes the only terms which that Court approved for the Chapter XII debtor and creditors, any other terms being a matter for the Chapter XII Court to consider upon application of the Chapter XII debtor with a hearing and notice to the Chapter XII creditors.

In the event a plan is filed having provisions as set forth above within the time ordered herein the stay shall continue for not more than 60 days from the date of filing of the plan for a vote of creditors and a hearing on confirmation, but in any event the stay shall terminate without further order on the expiration of 60 days from the date of filing of the plan, provided, however, that there is reserved to the plaintiffs the right to make application in this case at any time, without filing a new case, to terminate the stay upon a showing of a change of circumstances, including but not limited to default in the payment of taxes and insurance premiums as required by the deed of trust, which change of circumstances show that plaintiffs are not adequately protected aside from the value of the premises now established in this Opinion and Decision.

### ORDER DENYING MOTION TO ALTER OR AMEND JUDGMENT

On August 6, 1980, this Court entered judgment that the filing of a Chapter 11

proceeding by debtor Spilsbury stayed foreclosure of a deed of trust owed to a Chapter XII debtor under the old Bankruptcy Act. As part of that judgment this Court provided that the stay under Section 362 shall terminate at a fixed time unless

".  .  .  prior to that day and time, defendant–debtor shall have filed a plan which provides for the payment and performance, among other things, of the exact terms of the sale as ordered by the Bankruptcy Court in the Chapter XII case which sale was structured according to that Court's order and constitutes the only terms which that Court approved for the Chapter XII debtor and creditors, any other terms being a matter for the Chapter XII Court to consider upon application of the Chapter XII debtor with a hearing and notice to the Chapter XII creditors."

The debtor has moved to alter or amend the judgment by deletion of that provision upon grounds that the provision is an impossible condition and should not be imposed upon a debtor in a Chapter 11 case and that if this Court could stay the Chapter XII foreclosure, then it should apply other provisions of Chapter 11.

It was made eminently clear in this Court's decision that the creditors in the Chapter XII case were first and paramount beneficiaries in the note and deed of trust structured by order of the Chapter XII Court.

Can this Court now sitting in a Chapter 11 case ignore what was formally done for and on behalf of creditors in a pre–Code case? Does the debtor here rise above the dignity of a prior Court order which protected the Chapter XII creditors? Is it not fair to provide that the Chapter XII Court is to be consulted before the rights of creditors in that case may be crammed down or up as the case may be?

It must be remembered that the sale confirmed in the Chapter XII Court is not the ordinary and usual security transaction. It is a formal sale approved by the Court in a statutory proceeding made for classes of creditors in that case.

Section 403(a) of the Bankruptcy Reform Act of 1978, Pub.L. 95–598, provides:

"A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted."

It is not inconsistent to apply a stay order under Chapter 11 to the foreclosure under Chapter XII because this is a special State of Nevada note and deed of trust which gives the debtor herein a property interest which may be considered if there is adequate protection for a reasonable time. However, that is as far as the new Code may go to delay the *remedy* of foreclosure. But the *substantive* rights of the creditors and debtor in the Chapter XII case must continue to be governed as if the new Code had not been enacted and that means the Chapter XII Court must be consulted if there is to be any change in the substantive rights of creditors in that case.

Motion denied.